## REYNOLDS MORTGAGE CO. v. GARRETT et al. (No. 12193.)

Court of Civil Appeals of Texas. Fort Worth. Oct. 26, 1929.

Rehearing Denied Nov. 23, 1929.

Samuels, Foster, Brown & McGee, of Fort Worth, for appellant.

Templeton & Templeton, of Fort Worth, for appellees.

CONNER, C. J. On June 18, 1919, Bailey Whitley and wife executed a bond for the principal sum of $4,500 and interest coupons for $630, all payable to the Reynolds Mortgage Company, the bond on December 1, 1926, the coupons, one for $315, on December 1, 1925, and another in like amount on December 1, 1926. The bond and coupons were secured by a trust deed in due form with power of sale covering lands described in plaintiff's petition. The loan, as we shall designate it, thus evidenced, was purchased by Mrs. William Bohning, and the obligations referred to were indorsed by and delivered to Mrs. Bohning by C. T. Burns, the then vice president of appellant corporation. The indorsement upon the obligations was "without recourse." There was also a formal written assignment of the several instruments mentioned to Mrs. Bohning executed by Burns as vice president on July 21, 1919, for the recited consideration of $4,500. The assignment guarantees that the bond constitutes a valid lien, etc., but

specifically provides that the bond is assigned "without recourse."

There were three other later and similar bonds and interest notes assigned to Mrs. Bohning by the appellant mortgage company, one executed by L. W. Bills and wife for $2,600 on August 5, 1900, and another by S. R. Parks and wife for $2,000, on September 8, 1920, and yet another or fourth series of six bonds, dated November 4, 1920, by M. L. Larkin and wife, aggregating $2,250. The Bills and Parks obligations were evidenced by the same forms and indorsed and assigned without recourse, as in the case of Whitley and wife.

The bonds referred to for the greater part bore interest at the rate of 7 per cent., and the appellee Zilla Garrett, independent executrix of the last will and testament of Mrs. Bohning, deceased, alleged that, as an inducement to Mrs. Bohning to purchase said series of bonds and pay therefor the face value thereof, the defendant mortgage company "promised and agreed and bound itself to pay to said Mrs. William Bohning, annually, eight per cent. interest per annum thereon, instead of the seven per cent. provided for in said principal bond, and to collect and remit to her both the principal and interest owing on said indebtedness, as same matured."

It was further alleged that the agreement referred to as the inducement to Mrs. Bohning's purchase was thereafter reduced to writing, and was signed by the said Reynolds Mortgage Company, and was delivered to said Mrs. William Bohning, on, to wit, the 20th day of November, 1920. Said agreement was and same is in substance and in form as follows, to wit:

"The State of Texas, County of Tarrant:

"This memorandum of agreement, this day entered by and between the Reynolds Mortgage Company, acting by and through C. T. Burns, President, and Mrs. William Bohning, witnesseth:

"Said Mrs. William Bohning has agreed to purchase from said Reynolds Mortgage Company from time to time, real estate deed of trust notes and vendor's lien notes secured by real estate situated in the State of Texas, on which paper said Reynolds Mortgage Company is to give said Mrs. William Bohning a net rate of 8% per annum; said Reynolds Company to collect both interest and principal at maturity, and remit to said Mrs. William Bohning without charge. Said Reynolds Mortgage Company also to look after the securities for said loans and see that all taxes are paid thereon during the life of the loan.

"The said Reynolds Mortgage Company also guarantees to said Mrs. William Bohning, that in the event said Mrs. William Bohning should have to foreclose any of the mortgages or vendor's lien notes purchased from said Reynolds Mortgage Company, the property securing such notes so foreclosed, will sell for a sufficient amount to pay the principal of said note or notes, and interest then accrued, and all costs of sale. And in the event said property failed to realize the full amount of principal, interest and costs as aforesaid, said Reynolds Mortgage Company will make good to Mrs. William Bohning any deficiency.

"Witness our hands, this the 20th day of November, 1920.

"Reynolds Mortgage Company
"By C. T. Burns, President."

"Attest: R. M. Lampell, Treasurer. [Seal.]

So far as necessary to an understanding of our conclusions, the plaintiff further alleged: That the mortgage company, pursuant to the understanding and agreement with Mrs. Bohning, looked after the several loans purchased by her, collected and remitted to her from time to time interest and other payments due by the terms of the obligations, but that finally the principal parties to the obligations severally defaulted in payments of principal and interest, whereupon the lands securing the loans, which were described in the petition, were legally sold by virtue of the power given in the several trust deeds executed contemporaneously with the obligations and bid in, for sums stated, by Mrs. Bohning or the plaintiffs. That at the several sales referred to the lands described in the trust deed and securing the obligations in question failed to sell for a sufficient amount to pay the principal of the note, or notes, and interest accrued and all costs of sale, to cover which the guaranty declared upon had been given and the plaintiff sought to recover of the Reynolds Mortgage Company such deficiency, amounting in all to several thousand dollars. The plaintiffs also sought to recover from the several obligors, who also were made defendants, the balance due upon the obligations after crediting the amount for which the lands had been sold.

The defendant mortgage company answered by a general demurrer, a general denial, and specially that the assignments, if any, were without recourse; that the promise to pay 8 per cent. interest, instead of 7, as specified in the obligations, is a promise to answer for the debt, default, or miscarriage of another, and, not being in writing, is void under the statute of frauds; that the contract to make good the deficiencies alleged, if any, is not included within the provisions of the written obligation above copied, and if made at all, which is denied, is one of indemnity and that the lands covered by the trust deed, sold and bought in in behalf of plaintiffs, was of value greater than the deficiencies.

The case was submitted to the jury on special issues, which, together with the answers of the jury thereto, are as follows:

"1. Did the Reynolds Mortgage Company prior to or at the time of the purchase by Mrs. Bohning of the respective series of notes here in question and prior to the time it made and entered into the written agreement and contract of guaranty with Mrs. Bohning, which is dated November 20, 1920, and which has been introduced in evidence, have a verbal agreement and understanding with her, substantially to the effect that in the event she should have to foreclose any of the mortgages or vendor's lien notes which she might or would purchase from time to time from said company, it would guarantee that the property securing such notes so foreclosed, would sell for a sufficient amount to pay the principal of said note or notes and interest then accrued and all costs of sale, and that in the event said property failed to realize the full amount of the principal of said note, interest and costs as aforesaid, said company would make good to said Mrs. Bohning any deficiency which the proceeds of the sale of said lands under such foreclosure failed to pay? Answer: Yes.

"2. Was it understood and agreed between both parties to the written contract introduced in evidence before you that said written contract should take the place of the verbal contract, if any was made, referred to in question one—that is, that the terms and provisions of said written contract should apply to and include the bonds and notes which Mrs. Bohning purchased from said company prior to the date of said written contract as well as to those thereafter purchased by her? Answer: Yes."

Upon the verdict so rendered, the court entered a judgment in favor of plaintiffs against Bailey, Whitley and other original obligors on the bonds sold by the mortgage company for the several sums each was due upon his obligation after crediting the amounts for which the lands sold under the trust deeds. These several sums aggregated $14,078.32, for which judgment was also rendered in favor of plaintiffs against the defendant mortgage company, and the latter alone has appealed to this court.

As we understand the record, there is neither allegation, proof, nor claim to the effect that the appellant company is liable for any sum or sums of principal or interest collected by the company and not duly remitted to those entitled thereto. The vital question is whether the company is liable, as alleged, for the difference between the amount due and the amounts for which the lands securing the loans were sold.

The evidence shows that on the 12th day of June, 1919, C. T. Burns, vice president and general manager of appellant company, addressed the following letter to Mrs. Bohning, to wit:

"Dear Mrs. Bohning: Following my conversation of yesterday we are submitting you a loan under the name of Bailey Whitley for $4,500. I made this inspection myself about a week or ten days ago and not only became thoroughly acquainted with the land but also Whitley himself, and we consider this quite a fine security in every way.

"We are also submitting you two other loans which total about $5,000.
M. B. Coker  $2,800  200 acres Henderson Co.
M. B. Coker  $2,420  184 acres Henderson Co.

"I looked at these places last Friday and the moral tone of these loans is especially fine, and with such a hard working man as Coker, I believe the security will improve very much indeed within the next two or three years. The rate of these loans is seven per cent. and we will also be glad to give you our personal guarantee of which we were speaking yesterday should you desire.

"Thanking you for the further consideration of our mortgages,
    "Sincerely yours,
    "C. T. Burns, Vice Pres. & Gen. Mgr."

On October 8, 1920, a letter was written in behalf of the mortgage company to Mrs. Bohning, inclosing a bond, deed of trust, and other papers relating to the L. W. Bills loan for $3,320, in which the following statement appears: "We enclose an instrument changing the rate of interest in this loan from seven per cent to eight per cent, as this was the understanding you had with Mr. Burns."

On the same date, to wit, October 8, 1920, the company, through its secretary, addressed to Mrs. Bohning a letter, in which it was said: "We are today transferring the above loan (the L. W. Bills loan for $3,320) to you. The rate of interest, as you will notice, is seven per cent, but we hereby agree to pay you eight per cent interest on this loan instead of seven per cent as set out in the bond and deed of trust."

On January 4, 1924, a letter was addressed to Mrs. Bohning concerning the Parks loan of $3,825, in which it was said:

"The loan was sold to you to net eight per cent interest. We are sorry to inform you that this has been a very unsatisfactory loan, indeed. The borrower, Parks, who still owns the property has never made a payment aside from interest maturing on January 1, 1921. On January 1, 1922, there was an interest payment due to you of $200 and a $100 principal note. We ourselves advanced this payment and you agreed to carry the principal note. On January 1, 1923, there was due you $192 and $100 principal note. We did not advance this for the reason we can ill afford to advance interest where we ourselves are unable to collect same and only did so in the case of maturity Jan. 1, 1922, for the reason we thought we could make collection of the amount from Parks, but having been unable to reimburse ourselves for the amount involved, we feel, under the circumstances, there

is but little chance to get it back and again our finances simply will not permit us to do so.

"Parks has practically abandoned the place is the report made to us by an adjuster and collector recently sent to Red River County, and we have concluded probably the best thing to do is to foreclose. We can do this under our second deed of trust without disturbing the original loan, or if you desire, we are quite willing to turn the property over to you and release our second lien, in which event, you can bring foreclosure at your own convenience," etc.

On April 17, 1924, the following letter was written to Mrs. Bohning relating to the M. L. Larkin loan, stating, in substance, that they had been unable to collect payments on this loan and had brought foreclosure proceedings and bought the land in subject to Mrs. Bohning's first lien; that they had rented the lands to a good tenant and hoped out of the rentals to pay the interest maturing December 1, 1923, and December 1, 1924, respectively. But that "we cannot at this time take care of payments which matured December 1, 1923, for the reason our finances simply will not permit it."

We find no other evidence deemed material aside from the indorsements and assignments of the several obligations involved "without recourse," mentioned in the early part of this opinion.

Appellees contend: First, that the written contract of guaranty was but a part of a larger and more comprehensive agreement, a part of which was in writing and a part of which was oral. Second, that if the written agreement did not, as appellant contends, refer to and include the notes theretofore executed and delivered to Mrs. Bohning, as well as those thereafter executed, yet that it nevertheless constituted legitimate evidence of a similar prior parol agreement between the same parties with respect to the same class of paper as that covered by the written agreement and which did include such prior transactions. Third, that the evidence of such prior agreement, considered as a whole, was sufficient to carry this issue to the jury and to sustain their verdict with reference thereto. Fourth, that the written contract of guaranty was, in its application to the facts, ambiguous and uncertain as to whether it was or was not intended by the parties thereto to cover and include such prior transactions as those here in controversy; and that such issue was properly submitted to the jury. Fifth, that the jury having found in favor of the plaintiffs on this issue, and the verdict being sustained by the pleadings and proof, it should be sustained.

It may be admitted, for the purposes of our conclusion, that the original letter of June 12, 1919, written by Burns, vice president, to Mrs. Bohning, together with the letters following and oral testimony to the effect that from time to time the company supervised and collected on the loans, which was remitted to Mrs. Bohning, supports the conclusions that the company in fact, as an inducement to Mrs. Bohning's purchases, guaranteed to assure her the accelerated interest, but the plaintiffs in this case are not claiming anything on the ground of a failure to pay the accelerated interest, and, hence, we need not discuss the question as to whether or not the agreement of the company so indicated was in violation of the statute of frauds and without consideration. The vital question is, under all the facts, whether the evidence sufficiently supports the judgment on the alleged guaranty to make good any deficiency between what the lands described in the trust deed would bring at forced sale, and the amount actually due upon the obligations purchased by Mrs. Bohning. Appellant by its assignments asserts that the evidence is wholly insufficient to establish any such guaranty.

By again referring to the inception of the dealings, it must be said that no one gives the words or substance of the conversation that occurred between Mrs. Bohning and Burns, vice president, both now deceased, on the day prior to the date of the written letter of June 12, 1919. It is clear that the letter of June 12, 1919, contains no such guaranty; nor is any such guaranty indicated by subsequent correspondence, or in the testimony of any witness offered in behalf of appellees. On the contrary, the evidences referred to indicate that the only guaranty then made was for the payment of the accelerated interest. For instance, the letter of Alex Phillips, secretary, of October 8, 1920, in which he inclosed the L. W. Bills obligations, states that he incloses the instruments changing the rate of interest from 7 per cent. to 8 per cent., "as this was the understanding you had with Mr. Burns." So that, to support the judgment below, it must appear, as appellees alleged in their petition, that the written guaranty, to make good the deficiencies referred to, is operative in favor of the judgment. It was alleged that the guaranty appellees seek to enforce was made prior to Mrs. Bohning's purchases with the understanding that the guaranty was later to be reduced to writing, but there is no evidence whatever in support of such allegation. As before pointed out, the evidence relating to the original understanding can be given no greater effect than to say that it is sufficient to show an agreement upon the part of the company to pay the accelerated interest, etc. As already pointed out, the assignments of the obligations declared upon were "without recourse," and, in the absence of allegation and proof of ambiguity, fraud, accident, or mistake, must be given their ordinary effect, which is that the indorser assumes no unusu-

al contractual liability by virtue of the indorsement itself. An indorser of a note without recourse specially declines to assume any responsibility for its payment. See, Arthur v. Rosier, 217 Mo. App. 382, 266 S. W. 737; Cameron v. Ham, 23 Ohio App. 359, 155 N. E. 655; National City Bank v. Taylor (Tex. Civ. App.) 293 S. W. 613. The written assignment of the Whitley bond and notes, and it is conceded that other bonds were likewise so assigned, was not only assigned "without recourse," but it further contained warranties to the effect that the bond was "a first and valid lien on the land described in said deed of trust, and that all legal payments, offsets, and credits to which said bond is entitled do appear on the back thereof."

It is a familiar rule of construction that the inclusion of such a warranty in a written instrument excludes, in the absence of explanation, any additional or greater obligation. The Negotiable Instrument Act provides that a negotiable instrument may be transferred by the indorsement of a payee; that the indorsement may be either special or in blank; and it may also be "either restrictive or qualified, or conditional." See article 5934, Rev. Civ. Statutes, § 33. Section 38 of the same article declares that a qualified indorsement constitutes the indorser a mere assignor of the title to the instrument. The fact evidenced by the written assignments that the minds of the parties were directed to the subject of the guaranties, and that the guaranty given does not contain those in question, must lead to the conclusion that at the time of the assignments those in question were not intended.

Of course, in cases where fraud, accident, or mistake in making the indorsement without recourse is alleged, and there is a prayer to have a reformation of the indorsements, and the allegations are established, the indorsement will be reformed and the indorsee be relieved of the legal effect of the indorsement as made. Luse v. Beard (Tex. Civ. App.) 252 S. W. 243; Miller v. Stewart (Tex. Civ. App.) 214 S. W. 565. But in this case there are no allegations of fraud, accident, or mistake either in the assignments of the bonds in question or in the written guaranty above copied, executed on November 20, 1920. To be available, even ambiguity must be pleaded. Bryant Co. v. Hamlin Independent School District (Tex. Civ. App.) 18 S.W. (2d) 750; San Antonio Machine & Supply Co. v. Allen (Tex. Civ. App.) 268 S. W. 532. The instruments, therefore, must be given legal effect in the terms in which we find them. We have already discussed the effect of the assignments without recourse, and by reference to the written guaranty of November 20, 1920, it recites that the agreement had been "entered into" on the day it was signed. It makes no reference to a previous oral agreement, and, while it purports to guarantee that

the property securing notes foreclosed will sell for sufficient amount to pay the principal of the note or notes and interest then accrued, it unmistakably applies to and operates in favor of purchases that might thereafter be made by Mrs. Bohning; and it is undisputed that the Whitley, Bills, and Parks bonds were all assigned to and delivered to Mrs. Bohning prior to the execution of the warranty declared upon and executed on November 20, 1920.

We are of the opinion, therefore, that the verdict of the jury and the judgment of the court in favor of the appellees covering the deficiencies, etc., on the Whitley, Bills, and Parks bonds and notes, is wholly unsupported by evidence. However, the deficiencies shown in the Larkin bond and notes appear to come within the purview and operation of the written guaranty executed by the appellant company on November 20, 1920. While the Larkin obligations bear date of November 4, 1920, nothing in the record shows when they were transferred to Mrs. Bohning, and neither indorsement or written assignment of the Larkin notes to Mrs. Bohning appear in the evidence.

A. J. Beavers, president of the company succeeding Mr. Burns, testified without contradiction as follows:

"The interest provided to be paid on the Larkin loan was seven and a half per cent, but we paid Mrs. Bohning eight per cent. interest on that loan. We foreclosed on the Larkin land in 1923 and we paid the interest to Mrs. Bohning on that loan for the years 1924 and 1925.

"I have nothing here that will give me the date of the assignment of the Larkin notes to Mrs. Bohning, but there was an assignment to her of the superior lien, the same as in these other loans. I understand that that assignment has been lost. I think that loan was assigned in 1921."

In addition to this, the record shows that the first interest payment on the Larkin loan by the appellant company to Mrs. Bohning was on December 21, 1921, more than a year after the date of the written guaranty of November 20, 1920.

The finding of the jury and the judgment of the court covering the whole claim, as it does, necessarily includes appellees' claim under the Larkin loan, and we feel unable to say that the evidence is insufficient to support the finding and judgment in favor of appellees on the Larkin loan.

We have accordingly concluded that the judgment below in favor of appellees against the several original obligors on the bonds in controversy should be left undisturbed; that the judgment in favor of appellees arising out of the Larkin loan, amounting to $2,168.24, should be affirmed; but that the judgment in favor of appellees against the appellant on

the Whitley obligation, amounting to $5,718.-98, and on the Bills obligation for $2,656.34, and on the Parks' obligation for $3,535.76 should each and all be reversed and here rendered in favor of appellant, the cost of the appeal to be borne by appellant and appellees, share and share alike.