The opinion of the Commission of Appeals answering the certified question is adopted and ordered certified.

### GILBERT et ux. v. SMITH.

No. 1550—5870.

Commission of Appeals of Texas, Section A.
May 16, 1932.

Butler, Price & Maynor, of Tyler, for plaintiffs in error.

Starnes, James, Clower & Gibson, of Greenville, for defendant in error.

HARVEY, P. J.

This is a suit brought by Pick Smith against Joe Gilbert and wife, Inez Gilbert, to recover a certain undivided interest in the mineral estate in 350 acres of land in Van Zandt county. In the alternative, the plaintiff, Pick Smith, seeks reformation of a deed as hereinafter shown. The relief sought in other respects is not material to a decision of the questions raised in this appeal. The trial court sustained certain exceptions to the plaintiff's petition, which, in effect, are general exceptions to vital portions of the petition, and, from the judgment sustaining said exceptions, the plaintiff, Pick Smith, appealed. The Court of Civil Appeals reversed the judgment of the trial court and remanded the cause. 32 S.W.(2d) 901.

According to the allegations of the plaintiff's petition, one H. H. Smith owned a body of 350 acres of land in Van Zandt county. He died in April, 1921, leaving his widow and seven children, including Mrs. Inez Gilbert, surviving. In December, 1922, the widow and seven children executed a partition deed whereby a specific part of the 350-acre tract was set apart, in severalty, to each of said parties in interest. The tract set apart to Mrs. Inez Gilbert contained 40½ acres. The partition deed expressly provided that the mineral estate in the 350 acres was not partitioned, and should remain the joint property of the widow and seven children. As basis for his claim of title to Mrs. Gilbert's undivided interest in the mineral estate in said 350 acres of land, the plaintiff alleged in paragraph 4 of his petition that he is the owner, in fee simple, of the mineral interest of Mrs. Gilbert in said 350 acres of land, under a deed executed by Mrs. Gilbert and her husband after the above partition was made, by which deed the grantors conveyed to the plaintiff the tract of 40½ acres which had been set apart to Mrs. Gilbert in said partition, together with all the interest of Mrs. Gilbert in the mineral estate in said 350 acres of land. It is further alleged that the stipulation in said deed regarding said oil and mineral rights is in words as follows, to wit: "It is agreed and understood that we hereby release any and all mineral rights to said Pick Smith and wife, Maude Smith." It is further alleged that it was meant and intended by the quoted language of the deed

to convey to the plaintiff all the mineral rights of the grantors in said 350 acres of land, and that the plaintiff paid the grantors the sum of $1,200 for said 40½ acre tract of land and said mineral rights. It is further alleged that Mrs. Gilbert and her husband are wrongfully asserting title to the mineral rights conveyed by said deed. By what the plaintiff terms "a trial amendment" to his petition, the plaintiff seeks to have said deed so reformed as to bring within the operation of its terms the Gilbert interest in the mineral estate in the 350 acres of land, in case it be found that said deed as written does not effect a conveyance of said interest.

As ground for such reformation, the plaintiff alleges, in substance, that at the time and before said deed was executed, the Gilberts agreed to convey to plaintiff said 40½ acres of land, together with all their mineral rights in the 350 acres, for the sum of $1,200; that the Gilberts and the plaintiff went to a notary for the purpose of having the deed drawn in conformity to said agreement; that the notary prepared the deed, and it was duly executed by Mrs. Gilbert and her husband; that the grantors and the plaintiff believed that the clause contained in said deed, reading, "It is agreed and understood that we hereby release any and all mineral rights to said Pick Smith and wife Maude Smith," was sufficient to convey, and did convey, to the plaintiff all of Mrs. Gilbert's mineral rights in said 350 acres of land; that said notary represented to said parties to the deed that said clause was sufficient to convey all said mineral rights of Mrs. Gilbert; and that the grantors and the plaintiff relied on said representation.

■■ The defendants, Inez Gilbert and husband, excepted to the allegations contained in paragraph 4 of plaintiff's petition, on grounds substantially as follows: (1) That said allegations show that the deed in question does not embrace within its terms the undivided mineral interest of Mrs. Gilbert in the entire body of 350 acres of land; (2) that the clause of the deed, which has been quoted, is void for uncertainty; (3) that the said clause constitutes a patent ambiguity which renders the deed void so far as any mineral rights are concerned. These exceptions were sustained by the trial court. Plainly this was error. It is alleged in said paragraph that the plaintiff acquired, under said deed, all the mineral rights of Mrs. Gilbert in the entire 350 acres of land. Whether he did or not depends upon the language of the entire instrument. No part of the language of the instrument is set out in the petition, except the clause which has been quoted. The trial court, in passing upon said exceptions, did not have before it all the language of the instrument, and, manifestly, was not in a position to determine what meaning the quoted clause bears. For aught

that appears from the allegations in said paragraph of the petition, the deed might contain other language which will render clear the meaning and effect of the quoted clause. It is not the office of an exception to invoke the construction of the terms of an instrument which is not before the court.

■■ The defendants excepted to the allegations contained in the trial amendment to the plaintiff's petition on the ground, substantially, that said allegations show an attempt to have the court so reform said deed as to bring under operation of its terms the undivided mineral interest of Mrs. Gilbert in the 350 acres of land, and thereby divest her of her title to said mineral interest in contravention of the statute of frauds. The exception was sustained by the trial court. It is to be noted that, in his trial amendment, the plaintiff seeks reformation of the deed only in case the terms of the deed as written do not operate as a conveyance of Mrs. Gilbert's mineral estate in the 350 acres of land. In view of the contingency that the said deed, when the case is tried on the merits, will be construed as not affecting a conveyance of the mineral interest of Mrs. Gilbert in the entire body of 350 acres of land, we deem it proper to discuss the question to which the last-mentioned exception relates. It appears from the allegations contained in the plaintiff's trial amendment that the parties to the deed in question were mutually mistaken as to the effect of the clause of the deed which has been quoted, in that they believed that said clause had effect to convey Mrs. Gilbert's mineral interest in the 350 acres, as the parties intended. That the mistake is not such a mistake of law as will defeat reformation is well established in this state. In Kelley v. Ward, 94 Tex. 289, 60 S. W. 311, 313, it was held that "against the mistake of both parties, by which, in the effort to reduce the agreement which they had made to writing, they mistake its terms so that the writing does not represent the real contract, equity will grant relief." This doctrine was reaffirmed in Norris v. Belcher Land Mortgage Co., 98 Tex. 176, 82 S. W. 500, 83 S. W. 799. These cases, however, are not necessarily decisive of the precise question under consideration here, for the reason that the reformation sought there did not require the consideration of any of the provisions of the statute of frauds (R. S. art. 3995). Here we are concerned with the inquiry as to whether or not the right of the grantee in a deed, to have the instrument so reformed as to include land not embraced by its terms as written, is in any wise dependent on the requirements of the above statute.

Although there is ground for strong argument to the contrary, the negative of this question is sustained by the weight of authority. In Pomeroy's Specific Performance of Contracts, § 264, it is said: "It is settled,

by an overwhelming preponderance of authority, that a deed of land may be thus corrected by enlarging the scope, extending its operation to other subject matters, supplying portions of land which have been omitted, making the estate conveyed more comprehensive—as, for example, changing a life estate into a fee, and the like—and that the deed thus corrected may be enforced against the grantor." The decisions of many courts, which are entitled to the highest respect, are cited in support of the text. Again, in Ruling Case Law, vol. 23, p. 335, it is said: "On the other hand, by the almost universal rule, a deed, mortgage, or contract for sale of land may be reformed to include land omitted by mutual mistake of the parties; in other words, to include more land than is described therein, in accordance with the intention of the parties." See, also, the collation of the authorities in 3 Ann. Cas. page 781, and 18 Ann. Cas. page 920, and in 28 L. R. A. (N. S.) 813. No decision, by our Supreme Court, of the precise question under consideration, has come to our notice. However, the case of Goff v. Jones, 70 Tex. 572, 8 S. W. 525, 8 Am. St. Rep. 619, indicates that, in this state, as in most of other states, the statute of frauds is not regarded as affecting the right to reformation of an instrument relating to the sale of land, or as creating any restriction on the authority of a court of equity to grant such relief. In that case it was decided that a bond for title could be reformed to include land not embraced by its terms, even though the facts calling for such reformation rested in parol.

We conclude, after an extensive examination of decisions touching the subject, that the statute of frauds interposes no impediment to the reformation of the deed, as sought by the plaintiff, Pick Smith.

We recommend that the judgment of the Court of Civil Appeals reversing the judgment of the trial court be affirmed.

CURETON, C. J.

The judgment of the Court of Civil Appeals reversing that of the district court is affirmed, as recommended by the Commission of Appeals.