### SPIRES v. MANN et al.

No. 2370.

Court of Civil Appeals of Texas. Eastland.

June 4, 1943.

Rehearing Denied July 9, 1943.

Beall, Beall & Yonge, of Sweetwater, for appellant.

Wilson & Durham, of San Angelo, for appellees.

LESLIE, Chief Justice.

This is a real estate commission suit by Mary Lee Mann, executrix, and Clay Mann against L. R. Spires. The plaintiffs alleged that Arthur Mann for several years prior to his death, April 20, 1941, was a duly licensed real estate dealer, operating under the name of "Mann Commission Company", and that Clay Mann was also a duly licensed real estate dealer, doing such business as "agent and broker in association with Arthur Mann, who was his brother."

The defendant answered by general demurrer, special exceptions and general denial. A trial before the Court without a jury resulted in judgment for plaintiffs for amount sued for. There are no findings of fact and conclusions of law in the record.

The defendant appeals, challenging the correctness of the trial court's judgment first, "because the record contains no evidence or proof that Appellees, or either of them, were licensed real estate brokers in the State of Texas when their cause of action, if any, arose, as required by Art. 6573a,

202

Sec. 13, [Vernon's Annotated] Revised Civil Statutes of Texas"; and second, "because the alleged contract for payment of commission was oral and was made in May or June, 1940, which violates Art. 6573a * * * Sec. 22, effective since September 19, 1939."

The appellees take the position that said statute has no application to this case, because the land was listed by appellant with appellees, and actual negotiations with purchaser were begun before the statute went into effect. The appellees' counter propositions that since Spires listed his land with them by verbal agreement to pay them 50¢ per acre for selling land, and since they, prior to the effective date of Art. 6573a, found a purchaser who continued negotiations with Spires and afterward purchased his land, they are entitled to recover the agreed commission without regard to the terms of such statute.

Stated somewhat differently, the appellees assert that since they found a purchaser and initiated the negotiations between Appellant and purchaser before said law went into effect, they are entitled to recover their commission as though the sale had been consummated before the law went into effect. That, having earned their commission before the effective date of the statute, its provisions would not preclude them from recovering their commission, and that to give such statute a contrary effect would render the same unconstitutional and void.

The record discloses that Spires listed his land with Arthur and Clay Mann as partners as early as 1933 or 1934 and kept it continuously listed with them, down to the time the land was sold to Foster S. Price by virtue of a contract, specific performance of which was compelled in Spires v. Price, Tex.Civ.App., 159 S.W.2d 137. The evidence is that the final sales contract was signed June 8, 1940, but the negotiations leading up to the same were started by appellees with said Price some nine months and more before the signing of such contract. The proposition of selling Price the ranch was submitted to him by appellees on or before September 9, 1939.

There is evidence that the appellant, after the sale of the land, many times recognized his obligations to pay the commission and he did not testify on the trial of this case. The ranch contained 7040 acres and the judgment was for 50¢ per acre.

The above statute became effective September 19, 1939, and considerable time prior thereto, the appellees, under their listing contract with Spires, submitted his property for sale to Price, and kept up negotiations with the view of consummating such deal until the final contract was signed June 8, 1940, and later consummated.

As to the propositions now under consideration, the appellees stand upon the elementary principle that a broker is entitled to a commission for effecting a sale, if he is the efficient cause of the sale by bringing the parties together by negotiations, although the sale is thereafter concluded by the owner himself, or after the effective date of the statute.

Under the facts and the authorities it seems quite certain that the Mann Commission Company was the efficient cause of said sale.

West Brothers v. Thompson & Greer, 48 Tex.Civ.App. 362, 106 S.W. 1134, is a case in which West Brothers listed lots in San Angelo with Thompson & Greer for sale on a 5% commission. The agents submitted the property to W. R. Moore, but did not close the deal with him, and thereafter, West Brothers sold the property direct to Moore. West Brothers instituted a suit for their commission, and the case reached the appellate court, where the judgment in their favor was affirmed in an opinion saying: "It appears from the evidence in this case that the appellees were instrumental in bringing about the sale. They brought the parties together, and had negotiations with the purchaser concerning the sale. It is true that, subsequent to this time, the defendants made the sale to the proposed purchaser themselves without plaintiffs' knowledge, and plaintiffs did not participate in the sale as actually made. But we think it is the settled law that an agent is entitled to his commissions if he is, the efficient cause of the sale, and where he brings the parties together for the purpose of negotiating a sale, he is entitled to his commissions, notwithstanding the fact the sale is afterwards concluded by the principal himself. Graves et al. v. Baines et al., 78 Tex. 92, 14 S.W. 256; Sallee v. McMurry, 113 Mo.App. 253, 88 S.W. 157, and authorities there cited."

Other authorities announcing and applying the same rule of law are: Bellis v. Hann & Kendall, Tex.Civ.App., 157 S.W. 427; Shaw v. Faires, Tex.Civ.App., 165 S.W. 501.

We now give specific consideration to the application of said statute to the facts of this case. Since the appellant listed his property with the appellees long before the effective date of Art. 6573a and negotiations were under way, which ultimately materialized in the sale of his land to Price, we are of the opinion that said statute constitutes no obstacle to plaintiffs' right of recovery, although the deal was ultimately and finally closed after the effective date of said statute. Any other construction would render that act unconstitutional and void.

In Purser v. Pool, Tex.Civ.App., 145 S.W.2d 942, this court had occasion to consider the effect of Art. 6573a in a land commission case on the rights of a broker to his commission. We held, as stated in syllabus 3, that: "The laws existing at time oral conduct for commissions on sale of real estate was made, so far as material rights and remedies were concerned, became a part of the contract." Under the facts of that case, the Article was given no application and the broker was held to be entitled to recover his commission. That was a holding that the act could not apply to a contract made before it went into effect.

In the instant case appellees' evidence is uncontradicted that the listing agreement was entered into prior to the passage of said Act, and that negotiations thereunder were well under way prior to the effective date of the act. At such time the agreement, though oral, was legal and valid when entered into. The obligation of the contract could not thereafter be impaired by legislative enactment. U. S. Constitution, Art. 1, Sec. 10; Texas Constitution, Art. 1, Sec. 16.

Further consideration of this contention will be given presently, but at this point we express the opinion that said proposition is sound, and that it matters not that the obligation was still conditional as to complete performance at the time of the enactment of the law or its effective date. The constitutional protection or guaranty is not restricted to unconditional obligations, but extends to all alike. As to this, it would seem to be unnecessary to do more than call attention to the numerous conditional obligations recognized in the commercial world and protected by said constitutional provisions. For illustrations of such contracts, those of suretyship and insurance policies are typical. In such cases the surety pays off only in event the principal defaults, and a fire insurance company pays off after the house is burned. No actual liability for immediate payment exists at the time such contracts are entered into, and in most cases never arises. Nevertheless, such contracts or obligations carry a potential value and are themselves protected by the Constitution.

In the instant case the obligation of the listing agreement came within the scope of the constitutional protection at the time it was made and put in the process of execution, and the facts and circumstances then prevailing became controlling, and not those existing at the time of the effective date of the enactment. The testimony in this record would readily give rise to the trial court's implied finding to the effect that even before said law was passed, the appellees had begun with Price the negotiations which finally resulted in the sale to him, that is, that they had found a purchaser who later proved to be ready, able and willing to buy at the listed price. In that state of the transaction, the conditional obligation, or obligation of the contract, was of material value to the appellees, whose efforts had produced a purchaser before the Act became effective. Certainly Spires would have been without power under such facts and the law to recall the listing after Appellees had found the purchaser.

Applicable to the facts is the opinion in Edwards v. Kearzey, 96 U.S. 595, 601, 24 L.Ed. 793, which is in part as follows: "One of the tests that a contract has been impaired is, that its value has by legislation been diminished. It is not by the Constitution to be impaired at all. This is not a question of degree or manner or cause, but of encroaching in any respect on its obligation,—dispensing with any part of its force."

In Langever v. Miller, 124 Tex. 80, 76 S.W.2d 1025, 96 A.L.R. 836, our Supreme Court in an opinion by Chief Justice Cureton quoted at length from the above opinion, and also said: "A statute of frauds embracing pre-existing parol contracts not before required to be in writing would affect its validity." 76 S.W.2d at page 1030.

On the application of the principle under like circumstances, it is said in Vol. 6, p. 6406, Sec. 3710, Page on the Law of Contracts: "If a contract is made when it

can be proved by oral evidence, a subsequent statute which provides that such contracts can be proved only by written evidence is unconstitutional as applied to such prior contracts."

As stated in syllabus 5, Stephens County v. McCammon, Tex.Com.App., 40 S.W.2d 67, our Supreme Court held that a "Corporation having right to transact business when contract was executed and breach occurred, though forfeiting right thereafter for failure to pay franchise, held authorized to sue for breach of contract independent of revival of right to do business." If the state does not require a franchise or permit at the time of entering into a contract, a subsequent law requiring one as a prerequisite to the enforcement of such contract, would certainly impair the obligation thereof. A statute requiring of a foreign corporation proof that it held a permit to do business at the time the cause of action arose cannot operate as to contracts lawfully entered into prior to such legislative enactment. See Thompson on Corporations, 3rd Edition, Vol. 8, p. 929, Sec. 6677, and numerous authorities there cited, among them Middlebrook v. David Bradley Mfg. Co., Tex.Civ.App., 27 S.W. 169.

Discussing the effect of such enactments upon prevailing obligations, Chief Justice Marshall in Sturges v. Crowninshield, 4 Wheat. 122, 197, 4 L.Ed. 529, 549: "What is the obligation of a contract? and what will impair it? It would seem difficult to substitute words which are more intelligible, or less liable to misconstruction, than those which are to be explained. A contract is an agreement, in which a party undertakes to do, or not to do, a particular thing. The law binds him to perform his undertaking, and this is, of course, the obligation of his contract. * * * Any law which releases a part of this obligation, must, in the material sense of the word, impair it * *."

In some authorities it is carelessly intimated that the constitutional protection extends only to vested property rights. That tends to confuse the contract clause with other constitutional provisions primarily operative as to vested property rights. The contract clause as appearing in both Federal and State Constitutions is not so restricted, and the only requirement is that there be a legal and valid undertaking, regardless of whether the same or the negotiations thereunder has materialized in vested rights in the ordinary acceptation of that term.

A further application of the rule of law applied to the facts of the instant case is reflected by the opinion in Bank of Minden v. Clement, 256 U.S. 126, 41 S.Ct. 408, 65 L.Ed. 857. In that case Clement owed the Bank unsecured notes. He held a life insurance policy payable · to his estate. Thereafter, in 1914, the State Legislature of Louisiana enacted a law exempting such insurance and the proceeds thereof from the claims of creditors. Clement died insolvent and the bank brought proceedings to subject the insurance money, which had been collected by the administratrix, to its debt, contending that the Legislative act of exemption impaired the obligation of the contract, in that, if given force, it would operate to keep the bank from collecting the notes and enforcing the obligation. That opinion also quoted further from Chief Justice Marshall's said opinion, as follows: "Further acquisitions, are, therefore liable for contracts; and to release them from this liability impairs their obligation."

In making such holding, the opinion in the Minden case further says: "Section 10, article 1, of the Constitution * * * has been much considered by this court and often applied to preserve the integrity of contractual obligations."

Under the facts and authorities, the appellees are undoubtedly within their rights in enforcing said listing contract, under the terms of which the trial court has found they were the efficient cause of the sale of appellant's land to Price.

If we are correct in the foregoing conclusions, the authorities relied on by appellant are not controlling and will not be further discussed.

Further, and in response to appellant's points 3 to 7, both inclusive, we are of the opinion that the written sales contract enforced by specific performance in Tex.Civ. App., 159 S.W.2d 137, was a contract or memorandum sufficient in itself to evidence (1) Mann's agency to sell the land, (2) the final sale to Price under such authority, and (3) that a commission of 50¢ per acre was to be paid to the agent for the services. This is true, we think, without the introduction of parol testimony on any feature of the case. The judgment in said cause (Tex.Civ.App., 159 S.W.2d 137) rests on said contract and the main question raised by these points springs from that provi-

sion of the contract reading: "Should the purchaser fail to consummate this contract as specified for any reason, except title defects, seller shall have the right to retain said cash deposits as liquidated damages for the breach of this contract and shall pay to agent therefrom the sum of 50¢ per acre, or seller may enforce specific performance of this contract."

After due consideration of the contract, we reach the conclusion that the above provision read in the light of the whole contract does not limit the agent's right to a commission of 50¢ per acre merely to the "forfeit" money and "only in the event the purchaser refused to consummate the contract." The appellant insists that since the evidence fails to show a forfeiture, but "does show the contract and sale was consummated"; therefore, the agent was not entitled to any commission under the terms of the contract.

By such contentions the appellant apparently concedes that the agent would have earned and been entitled to his commission out of the forfeit money had the purchaser for any reason, other than title defect, refused to conclude the sale. As stated, the agents were the efficient cause of the sale, and earned the commission of 50¢ per acre, which, under one contingency, was to be paid from the $5,000 forfeit money, deposited with appellant's agent by Price, the purchaser. As we construe the contract, it does not evidence any intention that the 50¢ commission was to be paid only under the contingency stated. Since the sales contract expressly shows the listing, a sale thereunder by the agent and an agreement to pay 50¢ per acre as between the seller and the broker, it follows that all the terms necessary for the court to find in order to make a complete contract between the parties appears from the face of the contract, which was signed by the appellant and Arthur Mann. Properly and fairly construed, the contract reflects a commission due in the event of a consummated deal, as well as in the event no deal was consummated and the $5,000 had been forfeited by the purchaser.

■ From a reading of the agreement or memorandum, it can be readily ascertained that an agreement definitely implied (to pay the commission in the event of a consummated deal) was in the minds of the contracting parties as a part of and one of the terms of the transaction. Such is the implication in fact as part of the transaction, and it is as binding on the parties as any other part and is proved by the agreement itself.

The principle employed is expressed in Farmers State Bank v. Gorman Home Refinery, Tex.Com.App., 3 S.W.2d 65, 66, in this language: "Implied covenants or agreements are most usually applied to written contracts, meaning the obligations which the law reads into the instrument in consequence of the express terms. It is in no sense in that case proof of the contract by circumstances at all."

Likewise, in Texas Co. v. Ramsower, Tex.Com.App., 7 S.W.2d 872, 874, the rule is thus stated: "The implied obligation which we say inheres in the relation of the parties here is additional to what is expressly provided for in the instrument and is as much a part of the contract as if expressly stated. The fact that the obligation rests in implication and not in words may have an important bearing on remedies and their enforcement, but not in respect to rights otherwise."

In Texas P. Coal & Oil Co. v. Stuard, Tex.Civ.App., 7 S.W.2d 878, 881, opinion by Chief Justice Hickman (writ of error refused), this Court held that the "implied obligation to develop" an oil and gas lease was a contract in writing and action for breach thereof governed by the Four Years Statute of Limitation, and not by the Two Year Statute.

The often cited case of Fulton v. Robinson, 55 Tex. 401, appraised the legal effect of a memorandum in writing reading: "Received of James Henderson three hundred dollars, in part payment of a certain tract of land, being my own headright, lying on Rush Creek, in the cross timbers, this 23d March, 1859. Israel Earles." In that suit for recovery of land, the Supreme Court held the memorandum was sufficient to satisfy the Statute of Frauds requiring proof of a "promise or agreement" to sell and convey lands to be in writing. The gist of that opinion is the implication by the Court, from the language of the receipt, of an agreement between seller and buyer for the sale and conveyance of the land. The receipt did not expressly promise or agree to sell the land, but from its contents the court concluded that the seller admitted or agreed to the sale of a particular tract of land.

■ In line with such opinions and rules as those preceding, we conclude that the

above special provision that the agent's commission be paid in one contingency out of the forfeit fund, in event such occurred, does not establish or indicate that no commission should be paid for the valuable services which resulted in a consummated deal. The obligation to pay the 50¢ per acre under the latter circumstances clearly appears, from the contract and it is not susceptible to an interpretation, so contrary to human experience, which would compensate appellees in event of an unsuccessful deal and pay them nothing in case of a consummated or successful deal. The appellant's remaining assignments of error are overruled.

■ We are further of the opinion that if the written sales contract pleaded and proved by the appellees be held insufficient as a memorandum to comply with Section 22 of Art. 6573a, Vernon's Ann.Civ.St., nevertheless, the judgment is supported by pleadings and proof of facts which show that it was the intention of appellant and the Mann Commission Company to include in said memorandum a provision agreed upon orally between the parties to the effect that the seller would pay a commission of 50¢ per acre for the agent's services in selling the land under the facts of this case, and such stipulation was omitted by mutual mistake. Gilbert v. Smith, Tex.Com.App., 49 S.W.2d 702, 86 A.L.R. 445.

For the reasons assigned, the judgment of the trial court is affirmed.