**SPIRES v. PRICE.**

**No. 9406.**

Court of Civil Appeals of Texas. Austin.

Dec. 8, 1943.

Collins, Jackson, Snodgrass, & Blanks, of San Angelo, for appellant.

T. Ralph Logan, and Geo. T. Wilson, both of San Angelo, for appellee.

McCLENDON, Chief Justice.

Spires sued Price to recover title to and possession of a 7,040-acre ranch situated partly in Coke and partly in Nolan Counties. The trial was to the court; the judgment was in favor of Price; and Spires has appealed.

Title to the ranch had previously been vested in Price by judgment in a specific performance suit against Spires; which judgment was affirmed (Spires v. Price, Tex.Civ.App., 159 S.W.2d 137), and writ of error refused; and Price had been put in possession of the ranch by the sheriffs of the respective counties, under writs of possession.

Spires sought in the instant suit to avoid the effect of the specific performance judgment; and presents two points urging the following grounds in support of his asserted avoidance:

1. Failure of Price to comply with the specific performance judgment in two respects: (a) the cash deposit by Price with the clerk was $202.97 short of the amount specified in the judgment; and (b) the $1,500 for the Federal Land Bank stock was not deposited in cash with Fannin (representative of the bank) as required by the judgment.

2. Price, through his agent and attorney, procured a writ of garnishment which prevented collection of the $5,000 check given as part payment for the ranch.

The controlling facts, which are without dispute, follow: The specific performance judgment was rendered February 12, 1941. It divested title out of Spires and vested title in Price subject to certain outstanding liens which Price agreed to assume. It decreed title to the Land Bank stock in Price, adding that he "is hereby required to pay to defendant Spires $1,500 upon proper transfer of said stock in accordance with the regulations of said Bank." It decreed

recovery by Price of 57 cents per acre per year from July 1, 1940, until Price should be put in possession of the ranch. It required that Price pay Spires $88,075, less certain specified items aggregating $31,788.-83, and less the $5,000 check which Spires "is required to cash"; also less $383.53 (½ of 1940 taxes) and $2,466.10 (damages recovered by Price); leaving a stated balance of $48,436.54; "said cash payments that are due to defendant, to be made to defendant upon delivery of possession by defendant to plaintiff." The judgment recited that Price had offered in open court to pay Spires the above full amount, which Spires refused to accept; whereupon it was further decreed that: Price deposit the $48,-436.54 with the clerk and the $1,500 with Fannin, such deposits to be made within 60 days thereafter, if no appeal were taken from the judgment, but in case of appeal and affirmance, within 60 days after the mandate from the appellate court was filed in the trial court. The judgment further provided for adjustment of items accruing after July 1, 1940. The mandate was filed in the trial court May 11, 1942, and on May 14, 1942, Price deposited with the clerk $47,325.12, which, it is conceded, lacked $202.97 of the requisite amount. This shortage was due to an error in calculation.

Spires was represented in the matter by Beall, an attorney of Sweetwater, and by Upton, an attorney of San Angelo. Price was represented by Wilson of San Angelo. Prior to making the deposit Wilson asked Upton if a conference could be arranged for delivery of the ranch, and was told, "he would check into it and see." Wilson then telephoned Beall who "suggested that I come up on the 14th and we would try to have a conference there, and Price and I went up there, and Mr. Beall said Spires was not there, that he was busy." On that occasion Wilson submitted his calculations to Beall, requesting that he check the figures, which Beall declined to do because he didn't want to waive any of his client's legal rights. Wilson then told him he was going to deposit the money together with his calculation with the clerk, and if there was any mistake it would be adjusted when the stock payment was made. Beall said "that would be all right if Spires agreed to deliver the ranch, but that he would have a talk with Roy (Spires) and see if he would agree to deliver before he would tell me, and he suggested that I keep in touch with Mr. Upton, and that

after he had a conference with Mr. Spires he would communicate with" Upton and Upton "with me." In the latter part of May, Upton told Wilson that Spires "had made up his mind not to deliver the ranch voluntarily and not to accept payment for the lands or the stock and that we would have to go the legal route." Wilson asked Upton to go with him to Fannin and see if he would take the money and transfer the stock. Upton declined "because Spires would not deliver the ranch." Wilson then went to Fannin and offered to pay him the money, but Fannin refused to accept it unless he had a transfer of the stock. June 24, 1942, writs of possession were issued to the respective counties. Before they were executed, Spires filed an application for injunction which was set for hearing July 18, 1942. Upon hearing, temporary injunction was denied. Immediately thereafter there was a conference between the parties and their attorneys, in which it was agreed that in consideration of Price's paying Spires for a well and windmill which Spires had put on the ranch and Price's waiver of any "comeback on him because of the possibility of some (about 200 acres) of his land lying in the pasture of Ralph Harris, which he might claim by limitation," and withdrawal of the writs of possession, Spires would deliver possession of the ranch on September 1, 1942. On that date Wilson wrote to Spires tendering full performance of the agreement, and demanding possession of the ranch. There was no response to this letter and writs of possession were issued October 2, 1942, and Price was put in possession of the ranch thereunder. This suit ensued.

We overrule the point asserting forfeiture of the specific performance judgment based upon the $202.97 deficiency in the amount deposited with the clerk upon each of the following grounds:

■ 1. The refusal of Spires' attorney to check the figures of Wilson coupled with the unequivocal refusal of Spires to deliver possession of the ranch constituted a waiver of any right of forfeiture by reason of the error in calculation.

■ 2. Under the specific performance judgment, Price had 60 days after May 11, 1942, within which to make the deposit with the clerk. The judgment awarded him rental of 57 cents an acre per year, or $11 a day, from July 1, 1940, until Spires should deliver possession of the ranch. In making the deposit Wilson figured this rental up

to May 15, 1942. Thereafter the amount increased at the rate of $11 per day. Before the writs of possession were issued, and within the 60-day period, this additional rental had exceeded the amount of the deficiency in the deposit; so that a sufficient deposit was in the hands of the clerk within the 60-day period as required by the judgment.

3. The agreement of Spires to deliver the ranch on September 1, 1942, was supported by a valuable consideration—recalling of the writs of possession then outstanding, waiver of any subsequent claim of breach of warranty as to the 200 acres, and payment for the well and windmill—and constituted an express waiver of any right of forfeiture by reason of the error in calculation.

As regards payment for the bank stock: We think it clear that Price made what was tantamount to a legal tender of the amount due. The stock certificates were in the hands of Spires and would have to be endorsed and delivered to Fannin before they could be transferred on the books of the bank to Price, and as required by the judgment. Spires' refusal to comply with this requirement coupled with Fannin's refusal to accept the money on behalf of Spires, constituted an effectual legal tender. Furthermore, the agreement to deliver the ranch September 1, 1942, constituted a waiver of forfeiture of any rights under the specific performance judgment.

Upon the second point, the following are the salient facts: Sometime after the mandate in the specific performance suit was filed in the trial court, Mann sued Spires for 50 cents an acre as real estate broker's commission in connection with the Spires-Price ranch sale; and sued out a writ of garnishment against the bank upon which the $5,000 check of Price to Spires was drawn. The effect of which would have been to prevent cashing the check, if it had been presented for payment. Mann recovered judgment in the main suit and in the garnishment proceeding. These judgments were later affirmed. Spires v. Mann, Tex.Civ.App., 173 S.W.2d 200 and 206. Wilson represented Mann in this litigation. The record shows that Price had no part in this matter, although he may have known that Wilson was bringing the suit for Mann. Mann's right to bring the suit and sue out the garnishment cannot be questioned. To obtain the gar-

nishment writ it was essential that he give bond to indemnify Spires for any damage he might suffer in case the garnishment were illegally sued out. That is the protection the law afforded Spires, and the only protection he was legally entitled to. If Mann had failed in the suit or in the garnishment proceedings, he and his sureties alone would have been responsible to Spires. Wilson was not disqualified from representing Mann in the suit by reason of his relations with Price. He owed no duty to Spires in that regard; and Price had no control over his actions or those of Mann in connection with the proceedings. We are unable to see, therefore, in what way Wilson's representation of Mann could prejudice the rights of Price in relation to his claims against Spires.

Independently of this view, however, the agreement under which Spires was to deliver possession of the ranch on September 1, 1942, constituted a waiver of any right of forfeiture by reason of any prior acts on the part of Price or his attorney, and this included the garnishment writ which had been theretofore issued.

The trial court's judgment is affirmed.

Affirmed.