Charles E. RATTAN, Appellant,

v.

Edward T. DICKER and Charles R. Rudinger, Appellees.

No. 16249.

Court of Civil Appeals of Texas.

Dallas.

Nov. 8, 1963.

Rehearing Denied Nov. 29, 1963.

Blankenship & Curtis, Dallas, for appellant.

Durant, Mankoff & Davis, Dallas, for appellees.

WILLIAMS, Justice.

Summary judgment proceeding. Rule 166–A Texas Rules of Civil Procedure. The principal question involved in this appeal is whether a court of equity will grant a reformation of a written indorsement of a promissory note, based upon allegations of mutual mistake of the indorser and transferee of the note. If reformation is proper then the question is presented as to whether parol testimony is admissible to create an issue of fact as to whether the parties mutually intended that the blank indorsement was to be "without recourse". We have reached the conclusion that the remedy of reformation is available in this case and that an issue of fact is presented relating to the true meaning of the indorsement as intended by the parties. Accordingly, the judgment of the trial court in granting summary judgment must be reversed.

For a clear understanding of the entire transaction, it is necessary and desirable to recite certain antecedent facts. On October 14, 1961, Allan W. Graves and wife executed and delivered to Charles E. Rattan, their two promissory notes in the amounts of $64,924.41 and $7,700, respectively, said notes being vendor's lien notes in payment for Rattan's interest in a motel in Harlingen, Texas. Edward T. Dicker and Charles R. Rudinger were the owners of an interest in the Top O' Town Apartments in Dallas, Texas. Negotiations were entered into between Rattan and Dicker and Rudinger whereby Rattan was to purchase the Top O'

Town Apartments and the Graves' notes were to be transferred to Dicker and Rudinger as consideration for the sale. On October 20, 1961 a closing transaction took place in Dicker's office in Dallas. Present in the office at this time were Rattan, Dicker, George Bell and Isham P. Nelson. On this occasion a warranty deed to the Top O' Town Apartments was executed and delivered to Rattan who, in turn, delivered to Dicker the two Graves notes. The facts relating to the indorsement by Rattan on the notes in question are revealed in affidavits by Rattan and Bell made in opposition to the motion for summary judgment. In Rattan's affidavit he states that at the conference in Dicker's office on October 20, 1961, he stated in the presence of the other persons present that he would not transfer the notes except "without recourse". He says that he told Dicker that the notes were new notes, that no payments were due thereunder as of that time, that there was therefore no payment history on the notes, that he did not know enough about the notes or about the makers to guarantee payment of the notes, and that he could not therefore guarantee payment of said notes or indorse said notes, "with recourse". He states that Dicker replied: "I wouldn't expect you to". He then stated that he would void the printed words of indorsement and guarantee on the back of the notes and asked Dicker if the transaction would be "without recourse", to which Dicker replied: "Fine". He then signed his name at the place where indorsements are usually written and wrote the word "Void" across the following words which were printed on the reverse side of the notes: "And as indorser, I guarantee the payment of the within note at maturity or on demand at any time after maturity, waiving demand, protest and notice of nonpayment thereof", and signed his initials, "C. E. R.", thereon. Rattan states that it was the express stated agreement of the parties that the transfer of the notes would constitute an assignment without recourse.

In Bell's affidavit these facts are substantiated. He says that Rattan told Dicker: "There is no payment history on the notes. I do not know the Graves, except by reputation, and the payment of the notes depends on the successful operation of the motel by the Graves. You understand that I am not signing these notes with recourse". To which Dicker replied: "I would not expect you to". He says that Rattan then stated to Dicker that he, Rattan, would strike the words of indorsement and guarantee on the reverse side of the notes and told Dicker that such striking would constitute a "without recourse" transfer, to which Dicker replied, "Fine". After striking out the words of guarantee on the reverse side of the notes, Rattan signed his name and then placed his initials across the part that was struck out.

The original suit was filed by Graves and wife against Rattan, Bell and Dicker, to rescind the two notes on the ground of fraud. Dicker and Rudinger filed a cross action against the Graves and Rattan for the amount of the notes, interest and attorney's fees. The trial court severed the cross action of Dicker and Rudinger against Rattan from the main suit. Rattan specifically pleaded for a reformation of the indorsement on the two notes based upon the grounds of mutual mistake, the facts constituting such mutual mistake being set forth in the two affidavits referred to above. The trial court sustained the motion for summary judgment of Dicker and Rudinger and granted judgment for the amount of the notes, interest and attorney's fees against Rattan.

## OPINION

■ This being a summary judgment proceeding, the burden of proving that there is no genuine issue of any material fact is upon the moving party and all doubts as to the existence of a genuine issue as to a material fact must be resolved against the party moving for the judgment. In testing the correctness of the trial court's action we must accept as true all evidence of the party opposing the motion which tends to support such party's contention, and give

him the benefit of every reasonable inference which properly can be drawn in favor of his position. Gulbenkian v. Penn, 151 Tex. 412, 252 S.W.2d 929; McDonald, Texas Civil Practice, Vol. 4, Sec. 17.26, Page 1394, and authorities there cited. It is not our duty, nor was it the duty of the trial court, to ascertain the credibility of the affiants nor determine the weight of the evidence revealed in the affidavits. The only question is whether or not an issue of fact is presented and if so the motion should be denied. Gulbenkian v. Penn, 151 Tex. 412, 252 S.W.2d 929.

Appellant, in three points of error, contends that his remedy of reformation was available in this case; that genuine issues of material facts were presented as to an understanding and agreement between appellant and appellees that the indorsements on the notes in question were "without recourse" and that such evidence of the agreement and understanding was admissible to establish a mutual mistake of the parties as alleged. Appellees, by counterpoints contend that the trial court correctly granted summary judgment because parol testimony was inadmissible to establish an agreement which was in variance with that made by the parties and reduced to writing, and also that the affidavits of appellant were not sufficient to justify the application of remedy of reformation.

■■ The rule prohibiting the introduction of parol testimony to vary the terms of a written agreement is too well established to require discussion or citation of authorities. It is equally well settled that this rule is subject to well defined exceptions and one of the most important of which is the case where equity is called upon to reform a written instrument because of mutual mistake of the parties. This rule was succinctly stated in 45 Am.Jur., Sec. 53, Page 615, as follows:

"Generally where both parties have an identical intention as to the terms to be embodied in a proposed written instrument and the writing executed by them or at their direction is materially at variance with that intention, either party may obtain a decree conforming the writing to their intention if innocent third persons will not be unfairly affected thereby. In other words, when a written instrument fails to express the real intention of the parties because of a mutual mistake as to the real meaning of the language used, reformation will be decreed, even though there is no misunderstanding as to what words actually entered therein. The fact that interpretation or construction of a contract presents a question of law, and thus, therefore, the mistake was one of law, is not a bar to relief."

Of course, it is necessary that the mistake be mutual, and that both parties understood the contract as it ought to have been and in fact it was except for the mistake: 45 Am.Jur., Sec. 55, pages 617–618. This has been the law in Texas as evidenced by the opinion of the Supreme Court in Kelley v. Ward, 94 Tex. 289, 60 S.W. 311, wherein it was said:

"[A]gainst the mistake of both parties, by which, in the effort to reduce the agreement which they had made to writing, they mistake its terms so that the writing does not represent the real contract, equity will grant relief."

See also Norris v. W. C. Belcher Land Mortgage Co., 98 Tex. 176, 82 S.W. 500, 83 S.W. 799; Gilbert v. Smith, Tex.Com. App., 49 S.W.2d 702, 86 A.L.R. 445; Hale v. Corbin, Tex.Civ.App., 83 S.W.2d 726; Martin v. Snuggs, Tex.Civ.App., 302 S.W. 2d 676; Pomeroy's Equity Jurisprudence, 5th Edition, Sec. 845.

■ While these cases deal primarily with other written instruments we see no valid reason why the same rule would not apply to negotiable instruments. As stated in 45 Am.Jur. Sec. 25, Page 596:

"The general equity jurisdiction to reform written instruments so that they will express the true agreement of

the parties extends to negotiable instruments such as bills of exchange, and promissory notes. A contract of indorsement, including a blank indorsement, may likewise be reformed."

In 76 C.J.S. Reformation of Instruments § 13, Page 339, negotiable instruments are included as among those instruments which may be subject to reformation.

■ While there is a scarcity of authority in Texas on this identical question, yet we believe that the rule of reformation of negotiable instruments, in a proper case, is applicable in this state. This is especially true in a case like this one where the rights of third parties are not affected. In 36 Tex.Jur., Sec. 9, Pages 727–732, the rule is stated that reformation has been applied and otherwise recognized as a proper remedy in cases of promissory notes and indorsements. Fortenberry v. Warren Bros., Tex.Civ.App., 4 S.W.2d 101; Harkey v. Graves, Tex.Civ.App., 230 S.W. 750. In the case of Reynolds Mortgage Co. v. Garrett, Tex.Civ.App., 23 S.W.2d 835, wr. dis., a case involving an indorsement of a promissory note, the court said:

"Of course, in cases where fraud, accident, or mistake in making the indorsement without recourse is alleged, and there is a prayer to have a reformation of the indorsements, and the allegations are established, the indorsement will be reformed and the indorsee will be relieved of the legal effect of the indorsement as made. Luse v. Beard (Tex.Civ.App.) 252 S.W. 243; Miller v. Stewart (Tex.Civ.App.) 214 S.W. 565."

Of course, such remedy must be properly raised by pleadings and if not done the remedy is not available. This is demonstrated in Horton v. Bolding, Tex.Civ.App., 67 S.W.2d 435 where the court expressly pointed out:

"He did not present any pleading alleging fraud, accident, or mistake to explain why the written indorsement was not properly restricted according to the verbal agreement claimed by him, and asked for reformation on such ground."

Appellees rely strongly upon the case of Behrens v. Kirkgard, Tex.Civ.App., 143 S.W. 698, decided by this court in 1912. However, a careful reading of that opinion, while it might at first seem identical on the facts, will demonstrate that no plea of reformation or mutuality of mistake was advanced or pleaded. That case is nothing more than authority for the general rule that parol testimony is not admissible to show a variance in a written contract. The same answer is applicable to the case of Windham v. Creech, Tex.Civ.App., 79 S.W. 2d 631, relied upon by appellees. Here, likewise, there was no pleading seeking reformation. None of the cases cited by appellees decide the question where the application of equitable relief by way of reformation has been made.

Nor can it successfully be contended that the mutual mistake, if any made here, was one of law and not of fact and therefore reformation is not available. In addition to the authorities cited above on this identical question, we think that the language used in The State of Texas v. Wales, Tex. Civ.App., 271 S.W.2d 728, writ. ref. n. r. e., is applicable:

"If, however, as a result of a mutual mistake or fraud, the written instruments fail to express the agreement of the parties, parol evidence was admissible to show what the agreement was. If this were not the rule the reformation or correction of the written instrument would rarely, if ever, be accomplished. * * * The mistake was as to the legal effect of the terms used in the instruments. Since it was a mistake as to the effect of the wording of the instruments, it is not necessarily beyond the reach of a court of equity to correct. See Smith v. Gilbert, Tex.Civ.App., 32 S.W.2d 901, Gilbert v. Smith, Tex. Com.App., 49 S.W.2d 702, 86 A.L.R.

445, and cases cited; Kelley v. Ward, 94 Tex. 289, 60 S.W. 311; Norris v. W. C. Belcher Land & Mortgage Co., 98 Tex. 176, 82 S.W. 500, 83 S.W. 799."

Accordingly, we hold that the record presented here reveals an application by appellant for the relief of reformation of the indorsement on the promissory notes and that such remedy was available to him. We have also carefully reviewed the affidavits, the substance of which is set forth above, and find that the statements of fact therein contained clearly raise an issue of fact as to whether the instruments and their indorsements should be reformed. Having decided that an issue of fact is presented by the affidavits and pleadings on file it necessarily follows that the trial court erred in sustaining the motion for summary judgment.

The judgment of the trial court is reversed and remanded.