## CLAYTON BROS. v. LITTLEFIELD et al.
### (Nos. 353–3085.)*

(Commission of Appeals of Texas, Section A. Nov. 1, 1922.)

1. Sales ⬤62 — Contract for sale of calves held indivisible.

A contract for the sale of all calves dropped in 1915 to September 15th on seller's ranches and also the 1914 calves which were unbranded at the date of the contract was entire and indivisible, and delivery of all the calves was the essence of the contract; and the indivisible nature of the contract was not affected by a clause in the contract that delivery when commenced was to continue until all were delivered, thus permitting delivery in lots, as this clause related merely to the manner of delivery, nor by the fact that the calves were purchased at a specified price per head, as this was merely for convenient computation of the whole price.

2. Sales ⬤418(7)—Buyers of herd of calves, if it was "topped," were not required to purchase calves to take place of those held back.

Where herd of calves was bought by an indivisible contract and the herd was "topped" by sellers, that is, they failed to include and deliver the best of the calves, but delivered only the inferior calves, buyers were not required to purchase calves to take the place of those held back.

[Ed. Note.—For other definitions, see Words and Phrases, Topped.]

3. Sales ⬤418(1) — Damages for breach of contract to sell herd of calves by "topping" herd stated.

Where seller of herd of calves breached his contract by holding back some of the larger calves, or "topping" the herd, buyers were entitled to recover as damages the damage to or diminished value of the herd as a whole because of such "topping," and not merely the value of the undelivered calves; hence the correct measure of damages was the difference between the market value of the calves contracted for and the market value of the calves delivered, less the contract price of the calves not delivered, and not merely the difference between the contract price and market value of the undelivered calves at the time and place of delivery.

4. Sales ⬤413—Buyer's pleading held to permit proof of damages from topping herd of calves sold.

In action by buyers for breach of a contract of sale of calves, allegations of the petition that sellers concealed and refused to deliver the best of the calves, but delivered only the inferior calves or "tailings" to buyers, as a result of which buyers suffered damage, alleged to be the difference between the market value of the calves delivered and those contracted for, less the contract price of calves not delivered, were sufficiently specific to permit proof of damages sustained to the entire herd on account of holding back some of the larger calves, or "topping" the herd.

5. Sales ⬤418(8) — Damages for "topping" herd of calves sold held not speculative.

Where seller of herd of calves breaches his contract by holding back some of the larger calves, or "topping" the herd, the result of such "topping" is not so uncertain and speculative as to afford no basis for measure of buyer's damages, for the absence of the larger calves would not only reduce the weight of the herd but impair its quality and general appearance and thereby affect its salability and market value, and these are ascertainable and definite elements of damages.

Error to Court of Civil Appeals of Seventh Supreme Judicial District.

Suit by Clayton Bros. against George W. Littlefield and another. Judgment for plaintiff was reversed, and the cause remanded by the Court of Civil Appeals (194 S. W. 194), and plaintiff brings error. Judgment of Court of Civil Appeals reversed, and that of trial court affirmed.

Carl Gilliland, of Hereford, W. F. Schenck, of Graham, and Bean & Klett, of Lubbock, for plaintiff in error.

W. H. Bledsoe, of Lubbock, Martin, Kinder, Russell & Zimmerman, of Plainview, and J. B. Robertson, of Austin, for defendants in error.

SPENCER, P. J. Plaintiffs in error sued defendants in error to recover damages on account of the alleged failure of the latter

to deliver certain calves, in keeping with a contract between the parties.

The undisputed facts together with the facts found by the jury briefly are that defendants in error were to deliver to plaintiffs in error all the calves, with certain specified exceptions, dropped in 1915 up to September 15th, on certain ranches of defendants in error, and the 1914 calves which were unbranded at the date of the contract. Delivery of the calves was to begin on October 15, 1915, and continue until the contract was fulfilled. Calves were delivered in lots at different times. Defendants in error breached the contract by failing to deliver some of the unbranded calves.

The failure to deliver these calves was the basis of plaintiffs in error's cause of action. In stating their cause of action, plaintiffs in error alleged that defendants in error concealed and refused to deliver the best of the calves, but delivered only the inferior, or, as termed in the pleadings, the "tailings" to plaintiffs in error; as a result of which they suffered actual damage, which damage they alleged to be the difference between the market value of the calves delivered and those contracted for, less the contract price of the calves not delivered.

In support of their allegations of damages, they offered proof by witnesses, qualified as experienced cowmen, as to the injury or diminished value to a herd of calves, as the result of being "topped." The jury returned a verdict in the sum of $2,323, and a judgment was rendered thereon, which judgment was reversed and remanded by the Court of Civil Appeals.

The trial court instructed the jury that—

"the rule for the measure of actual damages is the difference between the market value of the calves contracted for and the market value of the calves delivered, less the contract price of the calves not delivered, if any."

The honorable Court of Civil Appeals reversed and remanded the cause on account of the court's charge as to the measure of damages; and it is claimed by plaintiffs in error in the application for the writ that the decision on this point is in conflict with the decision in American Well Works v. De Aguayo (Tex. Civ. App.) 53 S. W. 350.

There is, we think, a direct well-defined and irreconcilable conflict between the two cases on the precise question of law as applied to similar issues or state of facts. The case of American Well Works v. De Aguayo, was a suit to recover damages for breach of a contract to furnish certain machinery suitable for a desired purpose of the purchaser. It was established on the trial that the machinery furnished was inferior and of less value than that contracted for. The trial court in that case instructed the jury that the measure of damages was the difference between the value of the machinery contracted for and the value of the machinery furnished, less the unpaid portion of the contract price. The charge was approved by the Court of Civil Appeals and a writ of error was refused by the Supreme Court. American Well Works v. De Aguayo, 93 Tex. 724, 53 S. W. 350.

In the present case the Court of Civil Appeals was of the view that the ordinary rule of damages should be applied, that is, the measure of damages for the failure in whole or in part to deliver personal property under contract of purchase is the difference in the contract price and the market value of the undelivered property at the time and place provided for delivery by the contract.

The reasons for its views were that the contract between the parties was from its very nature severable or was made so by plaintiffs in error by accepting and retaining the cattle delivered after knowledge of failure to deliver a part of the unbranded or long age calves, and that there was no evidence that calves such as were not delivered could not have been purchased elsewhere and the herd brought up to the quality contracted for, thus supplying the undelivered ones.

[1] The contract is not, as held by the honorable Court of Civil Appeals, severable, but is entire and indivisible. This interpretation is reached as a result of construing the contract in its entirety to determine the intention of the parties. It clearly appears from the contract that the delivery of all the calves contracted for was intended and not a segregated lot or lots. The delivery of all the calves was the very essence of the contract.

The provision of the contract to the effect that delivery was to commence upon a specified date and to continue until all were delivered, thus permitting delivery in lots, does not convert the agreement into a divisible contract. The delivery in this manner pertains only to the divisibility of the subject-matter and not to the entire or severable nature of the contract itself. This provision was doubtless inserted for the convenience of the parties in handling the calves, and has no reference to the purchase of calves in lots.

Nor does the fact that the calves were purchased at a specified price per head affect the indivisible nature of the contract. The number of calves to be delivered was unknown at the date of making the contract, and therefore the fixing of a lump sum at that time impracticable. The contract plainly shows that it was intended by the parties that each head was to constitute a unit of the whole and the price of each unit fixed for determining the amount of the entire herd. The language employed has, we think, no other significance.

[2] Plaintiffs in error were entitled to have the kind of a herd delivered that they contracted for, that is, a herd with the unbranded calves of 1914 included. The fail-

ure to so include these calves rendered the quality of the herd delivered inferior to that contracted for, and they are entitled to recover for the injury sustained because of the inferior quality of the herd delivered. Plaintiffs in error were not required under the circumstances to purchase calves to take the place of those held back. Western Union Tel. Co. v. Stevens (Tex. Sup.) 16 S. W. 1095.

[3, 4] The rule for the measure of damages contained in the court's charge was, under the pleadings and facts of this case, correct. The allegations of the petition were sufficiently specific to permit proof in support of the damages sustained to the entire herd on account of holding back some of the larger calves, or "topping" the herd, as it is called.

[5] The Court of Civil Appeals' view, that the result of "topping" a herd of cattle is so uncertain and speculative as to form no basis upon which to found a measure of damages, is likewise erroneous. The absence of the larger calves would not only reduce the weight of the herd but impair its quality and general appearance, and thereby affect its saleability and market value. These are not matters of speculation, but elements of damage, certain and definite, susceptible of being ascertained.

The assignments of error by the defendants in error, the prevailing parties in the Court of Civil Appeals, have been duly considered by us, but we find no error requiring a reversal.

Because of the incorrectness of the decision on the question of damages, we recommend that the judgment of the Court of Civil Appeals be reversed and that of the trial court affirmed.

CURETON, C. J. The judgment recommended in the report of the Commission of Appeals is adopted, and will be entered as the judgment of the Supreme Court.