## HERZSTEIN v. BONNER.
### No. 5921.

Court of Civil Appeals of Texas. Amarillo.

Nov. 1, 1948.

Rehearing Denied Dec. 6, 1948.

Richards & Richards, of Dalhart, for appellant.

King Fike, of Dalhart, and John Aldridge, Jr., of Farwell, for appellee.

PITTS, Chief Justice.

Appellee, A. D. Bonner, sued appellant, Simon Herzstein, Jr., for damages as a result of an alleged breach of contract. The case was tried to a jury and judgment was rendered for appellee in the sum of $2,395.-01 upon the jury's verdict and an appeal has been perfected to this Court.

The record reveals that appellant owned and operated a dry goods store in Dalhart, Texas, prior to the early part of October, 1946. Sometime in August of the same year, he listed for sale his stock of goods, together with the fixtures, equipment and good will, with a local brokerage firm composed of W. D. Henson and R. A. Langhorne and known as Henson-Langhorne Agency, for a stipulated consideration. Thereafter the brokers contacted appellee and agreed with him upon the terms of a sale of appellant's said property listed with them. A written contract was prepared by the brokers of date September 25, 1946, containing all of the terms agreed upon. It was signed by appellee and mailed immediately by the brokers to appellant at Denver, Colorado, where he was then residing and engaged there in a similar business. A few days thereafter the brokers called appellant by telephone and appellant complained that the written contract authorized appellee as purchaser to continue

the use of appellant's name "Herzsteins" as a trade name for the business for a period of two years after the sale and he did not want his name so used but appellant further said he would be in Dalhart soon thereafter for further negotiations of the sale. On October 2 or 3, 1946, appellant visited Dalhart and he and appellee discussed the sale early on the morning of his arrival and agreed to leave out of the written contract the provision formerly included authorizing the use of the name "Herzsteins" as a trade name. Some two hours later they chanced to meet up with one of the said brokers, W. D. Henson, in town and all of them discussed the contract of sale and appellant and appellee then and there agreed upon all of the terms of the sale and authorized W. D. Henson to rewrite the contract including all of the terms theretofore recited except for the omission of the clause authorizing appellee to use appellant's name "Herzsteins" as a trade name. Appellant and appellee further agreed to meet in the office of the brokers soon after noon that day to execute the contract and consummate the sale. Soon after noon on that day while W. D. Henson, appellant's broker, was in his office and in the process of drawing the written contract previously agreed upon between appellant and appellee, appellant entered the office of the brokers in company with a Mr. Culbertson and advised the other broker, R. A. (Bob) Langhorne, that the stock of goods listed with the said brokers had been sold to the said Mr. Culbertson and he had Langhorne to draw up a written contract between him and Culbertson for the sale of the goods in question for a larger consideration than that offered by appellee. Langhorne drew up the contract as directed, it was signed by appellant and Mr. Culbertson, the sale to Culbertson was consummated and appellant paid the brokers the commission agreed upon between them.

■ Appellant contends that he was not under obligations to sell the stock of goods to appellee since the verbal contract between him and appellee was not to become effective until it had been reduced to writing and signed by the parties and until appellee had posted a forfeit and that appellant likewise reserved the right to see another party, who in fact was Mr. Culbertson, before the contract was to be consummated. In answer to special issues submitted to it, the jury found against appellant in his contentions when it found in effect that the parties entered into a verbal agreement for the sale and purchase of the property in question; that the sale was not conditioned upon the contract being first reduced to writing and signed by the parties before it would be binding upon them; that the agreement of sale and purchase of the property was not conditioned upon appellant's seeing and negotiating first with Mr. Culbertson; that appellee was not required to post a forfeit of $1000 in escrow before the contract would be binding and that appellee was financially able at all times to perform the obligations he had made in the contract. The rule has been well established that if there is evidence of probative force to support the findings of the jury, they are binding on the parties as well as on this Court.

Both appellant and appellee testified that they had a full and definite verbal understanding about all the terms of the contract at the time they authorized Henson to reduce it to writing. Appellant contends that the consummation of the contract depended upon the conditions heretofore mentioned while appellee testified that no such contingencies existed. He further testified that appellant said nothing about seeing a third person during either conference he had with him on the day of the trade, that appellant never at any time mentioned his putting up a forfeit or earnest money. He further testified that they did agree to reduce the contract to writing but nothing was said about its not being effective until it was reduced to writing and signed by them. He likewise testified that the broker Henson was the only party who suggested that he as purchaser put up a $1000 forfeit and that Henson requested that such be done in order to protect the brokers' commission and he agreed to put up such a forfeit for that purpose. A copy of the first purported contract drawn by appellant's brokers was introduced in evidence and is before this Court. It reveals that a forfeit of $1000 was to be posted by appellee when the contract was signed and there-

after applied as a part of the consideration. Both appellee and W. D. Henson testified that according to the verbal agreement made between the parties the only change that was to be made in the contract as it was originally drawn by the brokers was to omit that part of it authorizing appellee to use the name of "Herzsteins" as a trade name. Both parties agreed to eliminate that clause and appellee and Henson both testified that appellant and appellee agreed upon all the other terms expressed in the former contract reduced to writing just before noon on the day in question and both parties authorized Henson to rewrite the contract accordingly. In effect, appellant testified on cross-examination that he did not remember having discussed with appellee the proposal of his meeting the price of another proposed buyer during the early morning hour they were negotiating the trade and he further testified on cross-examination that he did not believe anything was said by either party at that time about appellant's putting up a forfeit. Iva Carlburg, manager of appellant's store in Dalhart at the time it was sold, testified that appellant told her sometime before noon on the day of the sale that he had sold the store to appellee. She further testified that soon thereafter on the same day Mr. Culbertson came in the store and offered appellant $10,000 for the furniture, fixtures and good will of the business. According to the testimony of appellee and W. D. Henson appellant had previously agreed on the same day to sell the furniture, fixtures and good will of the business to appellee for the sum of $3000.

 It has been held that if an agreement upon all the terms of a contract has been reached by the parties with nothing remaining to be done except to reduce its terms to writing, the contract is complete, unless it was further agreed that the contract was not to become effective until it was reduced to writing, and a breach of the contract by either party causing damage to the other, when no such condition existed, will support an action for damages. American Warehouse Co. v. Ray, Tex.Civ. App., 150 S.W. 763 (writ refused) and other authorities there cited. According to the findings of the jury in the instant case

appellant and appellee entered into an agreement upon all the terms of the contract and there was no agreement made that it should not become effective until reduced to writing. Based upon the jury's findings the trial court found that appellant breached the terms of the agreement and it appears from the record that such terms were breached before appellant's agent could get the contract reduced to writing. It is our opinion that the evidence supports the findings of the jury and the judgment of the court and appellant's complaints to the contrary are all overruled.

 Appellant complains that the trial court erred in the submission of Special Issue No. 5 and charges that it inquires about the damages based upon a sale of the goods in bulk, whereas he contends the issues should have inquired about the sale of the same at retail prices. We do not think the issue is subject to the complaints and charges made by appellant. The language of Special Issue No. 5 is as follows: "What do you find, from a preponderance of the evidence, was the reasonable market value of such property, if any, in addition to the invoice price of the stock of goods?" The issue inquires about the reasonable market value of the property. It does not inquire about a value "in bulk". The record does not reveal any objection made by appellant to the submission of Special Issue No. 5 before the charge was read to the jury. Appellant contends that he made a timely objection to the submission of such an issue but inadvertently referred to the issue as "Number 3" when it should have been "Number 5". Assuming that he did make such a clerical error in his objection to the charge and that he is entitled to be heard about such complaint, we cannot sustain his assignment of error. The object of the law is to award reasonable compensation for damages in a case such as this when such damages have been properly pleaded and proven. The burden was upon appellee as the proposed buyer to show that he sustained damages and the amount or extent thereof, as a result of which he was entitled to recover whatever reasonable damages he was able to prove he sustained. We think the measure of damages was properly submitted to the jury and the evidence sup-

ported the findings of the jury. Our position is supported by Harkey v. Hindman, Tex.Civ.App., 19 S.W.2d 151; Lathrop-Marshall Grain Co. v. Nash, Tex.Civ.App., 282 S.W. 824; Clayton Bros. v. Littlefield, Tex.Com.App., 244 S.W. 509; Campbell Co. v. Watson, 234 S.W. 929, Tex.Civ. App., 37 Tex.Jur. 673, Paragraph 309.

■ In his fifth point of error appellant complains that the trial court erred in submitting to the jury Special Issues Nos. 1, 3, and 4 and in the arrangement thereof. He complains further that such a submission was confusing and misleading to the jury, did not submit a full definition of the contract as applied to this case and that appellant's Special Requested Issue No. 5 with its subdivisions (a), (b) and (c) should have been submitted to the jury in lieu of Special Issues numbers 1, 3 and 4. This point of error is multifarious and quite general since it attempts to attack several distinct alleged errors and rulings of the trial court in one point. However the point will be considered by us since it is our policy to indulge a liberal construction in favor of the sufficiency of a brief and give effect thereto if we can determine with some degree of certainty what a party is complaining about. Darling v. Panhandle & Santa Fe Ry. Co., Tex.Civ.App., 209 S. W.2d 660.

■ Special Issue No. 1 inquired if there was a verbal agreement between the parties for the sale and purchase of the property in question. Special Issue No. 3 inquired if the agreement, if any, was to be reduced to writing and signed by the parties before it would be binding. The fourth Special Issue inquired if the agreement was conditioned upon appellant's having the privilege of first negotiating with Mr. Culbertson. We see nothing misleading about the issues or their arrangement. They were all answered in favor of appellee and against appellant without any apparent confusion in the minds of the jury. In his Special Requested Issue No. 5, which was refused by the trial court, appellant sought to have the court submit in sections (a), (b) and (c) the same subject matter as that submitted by the trial court in Special Issues Nos. 1, 3 and 4 except that appellant failed to place the burden of proof in sections (b) and (c) in his requested issue. Neither of the issues about which appellant complains attempts to define the term "contract". We find no error in the submission of the said issues by the trial court and we think appellant's Requested Special Issue No. 5 was properly refused by the trial court.

In his sixth point of error appellant complains that the definition of a contract as given by the trial court was not full and complete as applied to this case since the trial court refused to give his Special Requested Instruction as follows, to wit: "You are instructed that unless the minds of the parties meet and agree upon each and every essential element thereof, there can be no binding contract."

■ The trial court's definition of a contract is as follows, to wit: "A contract is an agreement between two or more persons for the doing or not doing of some particular thing or things." A proper application of the terms were made by the trial court in the charge to the jury. Appellant admitted in his pleadings and he admitted as a witness that he and appellee had reached a verbal agreement as to the terms of an oral contract but he contends that the oral contract was made subject to other conditions. The jury found against him on each of the claimed conditions and the jury's findings have each been heretofore sustained by us. Since it was admitted that the parties had agreed upon all the terms of the verbal contract, there was no controverted issue about whether or not the minds of the parties had met. On the contrary the record reveals that they had agreed on all of the essential elements of the verbal contract. Therefore it was not error for the trial court to refuse to submit appellant's said Special Requested Instruction since it would serve no purpose.

The record and all of appellant's points of error have been carefully examined. We find no reversible error. Appellant's points are all overruled and the judgment of the trial court is affirmed.