

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

No. 06-19-00014-CV

IN RE IGNACIO G. AND MYRA A. GONZALES
REVOCABLE LIVING TRUST

On Appeal from the Probate Court No. 1
Travis County, Texas
Trial Court No. C-1-PB-16-002121

Before Morriss, C.J., Burgess and Stevens, JJ.
Opinion by Justice Burgess

O P I N I O N

Ignacio G. Gonzales married Myra A. Gonzales and adopted Myra's natural child, Edna Jean Burgess, in 1965. Ignacio and Myra had two children together, Ignacio G. Gonzales, Jr. (Ignacio, Jr.), and Esperanza Gonzales. In 2004, Ignacio and Myra created the Ignacio G. and Myra A. Gonzales Revocable Living Trust (the Trust) and named Esperanza as trustee. After Ignacio's and Myra's deaths in December 2015, Esperanza filed a petition for declaratory judgment in Travis County probate court to determine whether Edna was a beneficiary of the Trust under its terms.[1] The trial court granted Esperanza and Ignacio, Jr.'s summary judgment, corrected alleged scrivener's errors in the Trust document, and declared that Edna was not a beneficiary under the Trust's terms. Edna appeals.

We agree with Edna that genuine issues of material fact precluded the trial court's entry of summary judgment. Accordingly, we reverse the summary judgment and remand the matter to the trial court for further proceedings.

I.      **Factual and Procedural Background**

The Trust terms did not mention Edna by name. A document titled "Summary of Basic Trust Information" (Summary) stated that the only "Beneficiaries" were Esperanza and Ignacio, Jr., and that they were the "children" for purposes of the Trust document. The Summary also specified that they would each receive a fifty percent distribution of the Trust assets. After the declaration of trust, the first Trust article, labelled "Identification," read, "The Grantors have two

---

[1]Originally appealed to the Third Court of Appeals, this case was transferred to this Court by the Texas Supreme Court pursuant to its docket equalization efforts. *See* TEX. GOV'T CODE ANN. § 73.001. We follow the precedent of the Third Court of Appeals in deciding this case. *See* TEX. R. APP. P. 41.3.

children, their daughter, ESPERANZA GONZALES and son IGNACIO G. GONZALES, JR. All references in this Declaration of Trust to the 'Grantors' children' are to them." In spite of this article, it is undisputed that Edna was Myra's natural child, who was adopted by Ignacio.[2] The Trust never used the phrase "Grantors' children" after this "Identification" article. Instead, in discussing the distribution of Trust assets, the document used the term "descendants." As a result, Ignacio, Jr., and Esperanza claimed that the Trust contained scrivener's errors.

To understand the arguments related to the alleged scrivener's errors, we review the relevant portions of the Trust document. The Trust established a surviving grantor's trust on the death of the first grantor and contained the following provision for its termination:

> **Termination.** Nine months after the death of the surviving Grantor, the trust created by this Article shall terminate. *Upon such termination*, *all of the remaining trust property shall be distributed to the Grantors'* [_____]. If none of the Grantors' descendants survives the surviving Grantor, one-half of the property of the trust created by this Article shall be distributed to the Husband's heirs and the other half of the property of the trust created by this Article shall be distributed to the Wife's heirs.

(Emphasis added). As trustee, Esperanza initially asked the trial court to correct the scrivener's error in the italicized sentence by including the word "descendants" after "Grantors." She then asked the probate court to determine whether Edna was a beneficiary under the Trust. The record contains no pleading showing that Esperanza asked the trial court to fill in the blank with the term "children."

The Trust document also provided that the trustee was to hold Trust property "in a single trust for the primary benefit of the surviving Grantor" in the Gonzales Family Trust (Family Trust)

---

[2]*See* TEX. EST. CODE ANN. § 22.004.

instead of distributing property to the surviving spouse outright. The termination provision of the Family Trust provided:

> This trust shall terminate when the surviving Grantor dies. Upon termination, all of the remaining trust property shall be distributed to the Grantors' descendants who are then living per stirpes; provided, however, if none of the Grantors' descendants is then living, one-half of such remaining principal shall be distributed to the Husband's heirs, and the other one-half of such remaining principal shall be distributed to the Wife's heirs.

The miscellaneous provisions of the Family Trust further stated:

> References to "descendant" or "descendants" mean lineal blood descendants of the first, second or any other degree of the ancestor designated; provided, however, that such references shall include, with respect to any provision of this Declaration of Trust, descendants who have been conceived at any specific point in time relevant to such provision and who thereafter survive birth; and provided, further, an adopted child and such adopted child's lineal descendants by blood or adoption shall be considered under this Declaration of Trust as lineal blood descendants of the adopting parent or parents and of anyone who is by blood or adoption a lineal ancestor of the adopting parent or of either of the adopting parents.

In her answer, Edna claimed she was a beneficiary under the trust because the language of the Family Trust distributed assets to Ignacio's and Myra's "descendants," not "children." Citing to this language, she also argued that the scrivener's error in the termination provision of the surviving grantor's trust should have been filled with the term "descendants," since the next sentence clarified what would occur "if none of the Grantors' descendants survive[d] the surviving Grantor."

Ignacio, Jr., separately petitioned the probate court to declare that Edna was not a beneficiary under the Trust. He argued that the Summary of the Trust indicated that distributions should only be made to Esperanza and him and that the use of the term "descendants" in the other portions of the Trust document created an ambiguity as to Ignacio's and Myra's intent. Ignacio,

4

Jr., did not ask the trial court to fill in the blank space in the termination provision of the surviving grantor's trust with the term "children."

Ignacio, Jr., and Esperanza, in her individual capacity, filed a traditional motion for summary judgment.[3] They argued that the ambiguity created by the Trust terms should be resolved in their favor because parol evidence from Gary J. Derer, who drafted the Trust, showed that Ignacio and Myra did not intend for Edna to be a beneficiary under the Trust.

During his deposition, Derer testified that he did not specifically remember Ignacio and Myra, but recalled that his paralegals used a form document to prepare their Trust, which he reviewed. Derer said that he generally advised clients to designate specific beneficiaries to avoid future litigation, but could not determine whether he spoke to Ignacio and Myra about the matter because he had "no direct memory of them." Derer also could not recall whether they told him they had another child.

Over a speculation objection, Derer "assumed" that the labeling of only Ignacio, Jr., and Esperanza as the grantors' children in the identification section suggested that no other children were intended beneficiaries under the Trust. He based his opinion on the Summary, which was intended to track the provisions of the Trust document and follow the grantors' intent. Accordingly, Derer testified that the termination provisions should have stated that, on termination of the Trust, "all of the remaining trust property shall be distributed to the Grantors' . . . children," but clarified that he did not know whether the surviving grantor's trust was ever created.

---

[3]Ignacio, Jr., and Esperanza also filed a no-evidence motion for summary judgment arguing that "they [were] unaware of the common law rule suggested by Edna" that "simply leaving a child out of the dispository provisions of a will without specifically disinheriting the child is ineffective in terms of the rights of said unnamed child to an equal share of the estate."

Additionally, over objection, and contrary to the definition of "descendants" in the Trust, Derer said that the term "descendants" was meant to refer only to Ignacio, Jr., and Esperanza.[4]

During cross-examination, Derer testified that, due to the December 2015 deaths of Ignacio and Myra, the termination provisions of the Family Trust, providing that Trust assets be distributed to descendants, governed. He also admitted that Edna was a descendant of Ignacio and Myra. While Derer initially stated he considered the Summary to be a part of the Trust document, he admitted during cross-examination that "it is not formally a part of the actual trust document." On further direct examination, Derer testified that all the termination provisions of the Trust document should have been changed to reflect distribution to Ignacio's and Myra's "children," not their "descendants."

Edna filed her own motion for traditional summary judgment in response to Ignacio, Jr., and Esperanza's motion, arguing that the Trust document itself was unambiguous and clearly stated that she was entitled to inherit as a descendant. She attached her birth certificate proving that Myra was her mother and adoption papers documenting her adoption by Ignacio.

After a hearing, the trial court granted Ignacio, Jr., and Esperanza's motion for traditional and no-evidence summary judgment and reformed all the relevant trust termination provisions to provide for distribution of trust assets to Ignacio's and Myra's "children," not "descendants." The judgment indicated that it was final and intended to dispose of all parties and all claims. Edna appeals.

---

[4]Derer testified that his license to practice law was revoked in 2008.

## II. Fact Issues Precluded Summary Judgment

### A. Standard of Review

To obtain a traditional summary judgment,

> (1) the movant for summary judgment has the burden of showing that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law; (2) in deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the nonmovant will be taken as true; and (3) every reasonable inference must be indulged in favor of the nonmovant and any doubts resolved in its favor.

*W.W. Laubach Tr./The Georgetown Corp. v. The Georgetown Corp./W.W. Laubach Tr.*, 80 S.W.3d 149, 154 (Tex. App.—Austin 2002, pet. denied) (citing *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548–49 (Tex. 1985)). "Once the movant produces evidence entitling it to summary judgment, the burden shifts to the non-movant to present evidence raising a genuine issue of material fact." *Lee v. Rogers Agency*, 517 S.W.3d 137, 144 (Tex. App.—Texarkana 2016, pet. denied) (citing *Walker v. Harris*, 924 S.W.2d 375, 377 (Tex. 1996)).

"We review a traditional summary judgment de novo." *Matter of Estate of Kuyamjian*, No. 03-18-00257-CV, 2018 WL 3749834, at *2 (Tex. App.—Austin Aug. 8, 2018, pet. filed) (mem. op.) (citing *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003)). "We also review de novo the trial court's legal conclusions on the construction of wills and trusts." *Id.* at *3.

### B. Law Regarding Construction of a Trust

Edna argues that the Trust was unambiguous and should not have been reformed in a manner which essentially disinherited her, even though she was Myra's natural child, on Derer's

incredible and speculative testimony. Rather, she urges us to reject his testimony as improper parol evidence designed to contradict the unambiguous Trust document.

"When we construe a will, we focus on the testator's intent." *Id.* (citing *San Antonio Area Found. v. Lang*, 35 S.W.3d 636, 639 (Tex. 2000)); *see Lee*, 517 S.W.3d at 145 ("The overriding principle to be observed in construing a trust instrument is to ascertain the settlor's intent with the view of effectuating it."). "We interpret trust instruments the same way as we interpret wills, contracts, and other legal documents." *Lee*, 517 S.W.3d at 145 (citing *Lesikar v. Moon*, 237 S.W.3d 361, 366 (Tex. App.—Houston [14th Dist.] 2007, pet. denied)).

We "ascertain a trust grantor's intent from the language contained in the trust's four corners and focus on the meaning of the words actually used, not what the grantor intended to write." *Kuyamjian*, 2018 WL 3749834, at *3 (citing *Soefje v. Jones*, 270 S.W.3d 617, 625 (Tex. App.—San Antonio 2008, no pet.)). "In this light, courts must not redraft [trust documents] to vary or add provisions 'under the guise of construction of the language of the [trust documents]' to reach a presumed intent." *Id.* (quoting *Lang*, 35 S.W.3d at 649). "We must interpret a trust to give meaning to all its provisions and to enact the intent of the grantor." *Id.* (citing *Hurley v. Moody Nat'l Bank of Galveston*, 98 S.W.3d 307, 310 (Tex. App.—Houston [1st Dist.] 2003, no pet.)).

"The meaning of a trust instrument is a question of law when there is no ambiguity as to its terms." *Lee*, 517 S.W.3d at 145 (citing *Nowlin v. Frost Nat'l Bank*, 908 S.W.2d 283, 286 (Tex. App.—Houston [1st Dist.] 1995, no writ)). "If the court is capable of giving a definite legal meaning or interpretation to an instrument's words, it is unambiguous, and the court may construe the instrument as a matter of law." *Id.* (citing *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983)).

8

"Only when the trust instrument's language is uncertain or reasonably susceptible to more than one meaning will it be considered ambiguous so that its interpretation presents a fact issue precluding summary judgment." *Id.* (citing *Coker*, 650 S.W.2d at 394).

In interpreting a trust document, we

"(1) [c]onstrue the agreement as a whole; (2) give each word and phrase its plain, grammatical meaning unless it definitely appears that such meaning would defeat the parties' intent; (3) construe the agreement, if possible, so as to give each provision meaning and purpose so that no provision is rendered meaningless or moot; (4) [ensure that] express terms are favored over implied terms or subsequent conduct; and (5) [note that] surrounding circumstances may be considered—not to determine a party's subjective intent—but to determine the appropriate meaning to ascribe to the language chosen by the parties."

*Id.* (quoting *McCarty v. Montgomery*, 290 S.W.3d 525, 532 (Tex. App.—Eastland 2009, pet. denied)). Also, we "must be particularly wary of isolating individual words, phrases, or clauses and reading them out of the context of the document as a whole." *Id.* (citing *State Farm Life Ins. Co. v. Beaston*, 907 S.W.2d 430, 433 (Tex. 1995)). "[A]n ambiguity does not arise merely because the parties advance conflicting interpretations." *W.W. Laubach Tr./The Georgetown Corp.*, 80 S.W.3d at 155 (citing *K3 Enters. v. McDaniel*, 8 S.W.3d 455, 458 (Tex. App.—Waco 2000, pet. denied)). "When a [document] contains an ambiguity, the granting of a motion for summary judgment is improper because the interpretation of the instrument becomes a fact issue." *Id.*

**C.       A Trial Court Can Correct Scrivener's Errors in an Unambiguous Document**

The identification article stated that Ignacio and Myra only had two children, Ignacio, Jr., and Esperanza. That article contemplated the use of the term "children" in the Trust document, but that term did not thereafter appear. Although the distribution provisions in the Trust used the term "descendants," Ignacio, Jr., and Esperanza argued that the identification article contemplated

9

the use of the term "children" in the document and, therefore, Edna's interpretation would render the identification article meaningless. They write, "Either the inclusion of the unused but defined term was a mistake or its subsequent and total omission from the remainder of the Trust Agreement was a mistake."

Ignacio, Jr., and Esperanza rely on scrivener's errors in arguing that the trial court's summary judgment was proper. On the one hand, they challenge the Trust as ambiguous. On the other hand, they argue that the scrivener's errors could be corrected even if the Trust was unambiguous. The trial court's ruling does not clarify whether it found the Trust to be ambiguous. If it had, summary judgment would have been improper since the resolution of the ambiguity was a question of fact. *W.W. Laubach Tr./The Georgetown Corp.*, 80 S.W.3d at 155. Accordingly, we begin with the assumption that the trial court corrected the alleged scrivener's errors after finding the Trust unambiguous.

"The fact that an error was caused by a scrivener's or draftsman's failure to embody the true agreement of the parties in a written instrument is a proper ground for reformation." *Horse Hollow Generation Tie, LLC v. Whitworth-Kinsey #2, Ltd.*, 504 S.W.3d 324, 327 (Tex. App.—Austin 2016, no pet.). "If, by mistake, an instrument as written fails to express the true intention or agreement of the parties, equity will grant reformation of the instrument so as to make it correctly express the agreement actually made." *Brinker v. Wobaco Tr. Ltd.*, 610 S.W.2d 160, 163 (Tex. Civ. App.—Texarkana 1980, writ ref'd n.r.e.). "The rule applies to express inter vivos trusts as well as to other written instruments." *Id.* (citing *Ford v. Ford*, 492 S.W.2d 376 (Tex. Civ.

10

App.—Texarkana 1973, writ ref'd n.r.e.)); *see* RESTATEMENT (THIRD) OF TRUSTS §§ 12, 62 (AM.

LAW INST. 2003) and comments.

Section 112.054 of the Texas Property Code provides that a court may order the terms of a

trust modified if "reformation is necessary to correct a scrivener's error in the governing document,

even if unambiguous, to conform the terms to the settlor's intent" and such intent is established by

clear and convincing evidence. TEX. PROP. CODE ANN. § 112.054(b-1)(3), (e) (Supp.). It is

undisputed that Section 112.054 was not effective at the time the Trust was created. Nevertheless,

the subject of this Texas Property Code provision was grounded in common law and presented in

the Restatement (Third) of Trusts and Restatement (Third) of Property, both in effect when the

Trust was created. RESTATEMENT (THIRD) OF TRUSTS § 62 ("A trust may be rescinded or reformed

upon the same grounds as those upon which a transfer of property not in trust may be rescinded or

reformed."); RESTATEMENT (THIRD) OF PROP.: WILLS & DONATIVE TRANSFERS § 12.1 (AM. LAW

INST. 2003); *see Brinker*, 610 S.W.2d at 163–64.

Specifically, the Restatement (Third) of Property provides,

> A donative document, though unambiguous, may be reformed to conform the text
> to the donor's intention if it is established by clear and convincing evidence (1) that
> a mistake of fact or law, whether in expression or inducement, affected specific
> terms of the document; and (2) what the donor's intention was. In determining
> whether these elements have been established by clear and convincing evidence,
> direct evidence of intention contradicting the plain meaning of the text as well as
> other evidence of intention may be considered.

RESTATEMENT (THIRD) OF PROP.: WILLS & DONATIVE TRANSFERS § 12.1. As comment c to this

section clarifies, reformation may occur "even after the death of the donor." RESTATEMENT

(THIRD) OF PROP. § 12.1 cmt. c. Thus, "[t]he fact that the written instrument is couched in

unambiguous language, or that the parties knew what words were used and were aware of their ordinary meaning, or that they were negligent in failing to discover the mistake before signing the instrument, will not preclude relief by reformation." *Brinker*, 610 S.W.2d at 164.

"The objective of reformation is the correction of a . . . mistake made in preparing a written instrument so that the instrument reflects the original agreement of the parties." *Horse Hollow Generation Tie, LLC*, 504 S.W.3d at 326 (citing *Cherokee Water Co. v. Forderhause*, 741 S.W.2d 377, 379 (Tex. 1987) (citing *Brinker*, 610 S.W.2d at 163)). "Reformation requires two elements: (1) an original agreement and (2) a mutual mistake made after the original agreement in reducing the original agreement to writing." *Id.* (citing *Cherokee Water Co.*, 741 S.W.2d at 379). "A court is without power to make a contract that the parties did not make; an actual agreement reached prior to the drafting of the instrument involved is a requisite to an action for reformation." *Cherokee Water Co. v. Forderhause*, 741 S.W.2d 377, 379 (Tex. 1987) (citing *Cont'l Oil Co. v. Doornbos*, 402 S.W.2d 879, 883 (Tex. 1966)).

"The mistake may be shown by parol evidence." *Brinker*, 610 S.W.2d at 164. "[A]lthough a mutual mistake of the parties is required in most instances, if a settlor of a trust receives no consideration for the creation of the trust, a unilateral mistake . . . is sufficient." *Id.* "Any mistake of the scrivener which could defeat the true intention may be corrected in equity by reformation, whether the mistake is one of fact or law." *Id.* (citing *McClung v. Lawrence*, 430 S.W.2d 179 (Tex. 1968)).

**D.      Analysis**

Reformation of the Trust to substitute "children" for "descendants" required Ignacio, Jr., and Esperanza to meet a high burden of proof.  Comment b to Section 12.1 states,

> When a donative document is unambiguous, evidence suggesting that the terms of the document vary from intention is inherently suspect but possibly correct.  The law deals with situations of inherently suspicious but possibly correct evidence in either of two ways.  One is to exclude the evidence altogether, in effect denying a remedy in cases in which the evidence is genuine and persuasive.  The other is to consider the evidence, but guard against giving effect to fraudulent or mistaken evidence by imposing an above-normal standard of proof.  In choosing between exclusion and high-safeguard allowance of extrinsic evidence, this Restatement adopts the latter.  Only high-safeguard allowance of extrinsic evidence achieves the primary objective of giving effect to the donor's intention.

RESTATEMENT (THIRD) OF PROP. § 12.1 cmt. b.

We find that Ignacio, Jr., and Esperanza's summary judgment evidence failed to carry their burden to establish their entitlement to judgment as a matter of law.  The Trust clearly contained scrivener's errors.  However, the question of Ignacio's and Myra's intent was not shown by clear and convincing evidence as a matter of law.  Derer did not remember meeting with Ignacio and Myra, had "no direct memory of them," and could not recall whether they informed him of Edna's existence.  Based on this testimony, which we view in the light most favorable to Edna, it is quite possible that the scrivener's error occurred in the identification article and should have included Edna.  The identification article stated Ignacio and Myra only had two children.  This was a scrivener's mistake of fact.  It is undisputed that Edna is Myra's natural child and that she was adopted by Ignacio.  Further, Derer made clear that his opinions were based on his assumption that Ignacio and Myra intended to disinherit Edna from his reading of the Summary and Identification article.  An assumption is not proof.  Thus, in light of the evidence in this case, Ignacio's and

13

Myra's intent is a question of fact for a jury. *See Viscardi v. Pajestka*, 576 S.W.2d 16, 19 (Tex. 1978) ("The intent of the grantor is a question of fact."); *Duke v. Garrett*, 263 S.W.2d 680, 683 (Tex. Civ. App.—Waco 1953, no writ) ("[T]he authorities are unanimous in holding that the question of whether or not there is a mutual mistake of fact so as to authorize the reformation of a deed is a question of fact for the jury.") (citing *Olvey v. Jones*, 156 S.W.2d 977, 980 (Tex. 1941)); *see Simpson v. Curtis*, 351 S.W.3d 374, 378 n.1 (Tex. App.—Tyler 2010, no pet.) (same).

## III.    Conclusion

We reverse the trial court's summary judgment and remand this case for further proceedings.


Ralph K. Burgess
Justice


Date Submitted:     May 23, 2019
Date Decided:       June 6, 2019

14